919 N.E.2d 941 (2009)
235 Ill.2d 319
The PEOPLE of the State of Illinois, Appellant,
v.
Salvador ORTIZ, Appellee.
No. 107363.
Supreme Court of Illinois.
November 19, 2009.
*943 Lisa Madigan, Attorney General, Springfield, Richard A. Devine and Anita Alvarez, State's Attorneys, Chicago (James E. Fitzgerald, Alan J. Spellberg, Michelle Katz, Tasha-Marie Kelly and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.
Douglas B. Sanders, Jenny A. Austin, Angela C. Vigil and Mark A. Oates, of Baker & McKenzie LLP, Chicago, for appellee.
Karen L. Daniel, Joshua A. Tepfer, Chicago, and John Christopher Bernard, Jeffrey Han, Amy Malinowski and Danya Resnick, law students, for amicus curiae Center on Wrongful Convictions.

OPINION
Justice BURKE delivered the judgment of the court, with opinion.
Defendant Salvador Ortiz was convicted of first degree murder after a bench trial and sentenced to 47 years in prison. On direct appeal, the appellate court affirmed defendant's conviction and sentence. People v. Ortiz, No. 1-94-2094, 281 Ill.App.3d 1131, 233 Ill.Dec. 771, 701 N.E.2d 836 (1996) (unpublished order under Supreme Court Rule 23). Defendant's first two postconviction petitions were summarily dismissed by the circuit court of Cook County. The third petition, at issue in this appeal, alleged actual innocence based on newly discovered eyewitness testimony. The trial court denied the third petition following an evidentiary hearing. The appellate court reversed the trial court's denial of the petition and remanded the cause for a new trial. 385 Ill.App.3d 1, 324 Ill.Dec. 715, 896 N.E.2d 791. On appeal to this court, the State contends: (1) that the appellate court erred in holding that a successive postconviction petition alleging actual innocence need not meet the cause-and-prejudice test; and (2) that the trial court's denial of defendant's third postconviction petition was not manifestly erroneous. For the reasons that follow, we affirm the decision of the appellate court and remand for a new trial.

BACKGROUND
The victim, Francisco Ramos, was shot and killed near Gill Park on Sheridan Road in Chicago on June 28, 1992. At defendant's trial, Christopher Estavia and Edwin Villariny testified as eyewitnesses for the State. Estavia testified that he was sitting on his car across the street from Gill Park when he saw Oscar Chacon and Edwin Gomez "false-flagging" Ramos by displaying rival gang signs in order to determine Ramos' gang affiliation. Estavia *944 testified that Oscar, Gomez, and defendant were members of the Latin Eagles street gang; Estavia was not a member of a gang. When Ramos approached Oscar and Gomez, they began physically beating him. Estavia heard someone yell, "Eagle, Eagle." Approximately 8 to 10 persons, including defendant, began running from other areas of the park and joined in the beating. Estavia then left the area and did not witness anyone shoot Ramos.
At trial, Estavia admitted giving a written statement to police on August 22, 1992. In that statement, he said that he saw defendant pull a weapon from his body and fire it at Ramos. He then saw Oscar point a gun at Ramos. After that, Estavia fled the area.
Estavia further testified at trial that in August 1992, sometime after his statement to police, his car windows were shot out, and his wife was threatened at her workplace. The police later placed Estavia in protective custody in 1993 after he reported that an unknown person shot at him. Estavia admitted that on May 4, 1993, he gave a statement to people who worked for the defense, recanting his prior statement to police. On February 2, 1994, Estavia failed to appear in court, in violation of a subpoena, and a warrant was issued for his arrest.
On cross-examination, Estavia admitted that he testified in a deposition that he did not see defendant shoot Ramos. He also admitted on cross-examination that on the day of the incident, he was high on cocaine and had consumed six to eight beers.
At defendant's trial, Villariny testified that he was a former member of the Latin Eagles and knew defendant from the neighborhood. He denied being at Gill Park on June 28, 1992. He acknowledged giving a statement to police on August 24, 1992, but testified that he was beaten and threatened by police into giving a false statement. Villariny testified that, to his knowledge, defendant had nothing to do with the death of Ramos. Detective John Murray and Assistant State's Attorney Patrick McGuire both testified, denying Villariny's claims of coercion and brutality.
In his prior statement to police, Villariny said that he was at the park at around 9:45 p.m., that defendant and Oscar "false flagged" Ramos, beat him, and that several others joined in the beating. Defendant then fired a single shot at Ramos, who then ran away. Oscar chased after Ramos and shot him four more times. A third, unknown man on a bicycle followed Ramos and shot him a sixth time.
The forensic evidence introduced at trial showed that Ramos died as the result of multiple gunshot wounds. Ramos sustained six gunshot wounds, with no evidence of close-range firing. Five bullets were recovered from his body, including one .32-caliber and four .22-caliber bullets. The medical examiner testified that the pattern of wounds indicated that at least three bullets entered from the back and went through to the front of his body. Ramos also sustained multiple other injuries, including blunt trauma injuries consistent with being kicked in the face.
The defense called Arthur Dunlam, who testified that he was with defendant and a group of others in Gill Park on June 28, 1992. At around 9:45 p.m., they were drinking beer in the southwest part of the park when they heard sounds like shots or firecrackers. They then left the park when someone told them there had been a fight and the police were coming.
The trial judge found there was "little, if any believability" to Dunlam's testimony. He found that Estavia's and Villariny's recantations of their prior statements to police carried "little weight for believability." Furthermore, there was corroboration between the witnesses' prior statements under circumstances that were not a *945 basis for fabrication, and the forensic and ballistics evidence corroborated those statements. The trial court found defendant guilty of first degree murder and sentenced him to 47 years in prison. Defendant's conviction and sentence were affirmed on direct appeal. People v. Ortiz, No. 1-94-2094, 281 Ill.App.3d 1131, 233 Ill.Dec. 771, 701 N.E.2d 836 (1996) (unpublished order under Supreme Court Rule 23).
In defendant's initial postconviction petition, he alleged actual innocence and ineffective assistance of counsel for failing to call three witnesses who would have supported his alibi defense. The trial court summarily dismissed the petition. The appellate court affirmed, holding that the witnesses were known to defendant at the time of trial and did not constitute newly discovered evidence. People v. Ortiz, No. 1-98-1311, 307 Ill.App.3d 1073, 260 Ill.Dec. 289, 760 N.E.2d 1062 (1999) (unpublished order under Supreme Court Rule 23). This court denied leave to appeal. People v. Ortiz, 187 Ill.2d 585, 244 Ill.Dec. 189, 724 N.E.2d 1273 (2000) (table).
In his second postconviction petition, defendant again claimed actual innocence based on affidavits from Victoria Kahn and Victor Ocasio. Kahn alleged in her affidavit that she witnessed the shooting and was unable to identify defendant as the shooter at a subsequent lineup. Ocasio alleged in his affidavit that on June 28, 1992, he was at a pay phone on the northwest corner of Sheridan Road and Fremont Street when he saw the victim running westbound on Sheridan. He then saw Oscar Chacon chasing the victim on a mountain bike. Oscar was wearing a black hooded sweatshirt and carrying a handgun. He got off the bike and shot four times at the victim. Ocasio then saw Efrain Chacon, Oscar's cousin, also wearing a hooded sweatshirt and riding a mountain bike. Efrain shot at the victim three times. Ocasio did not mention defendant in his affidavit. He stated that he did not come forward with the information sooner because he feared for his safety.
The trial court summarily dismissed the second petition, finding defendant's claims were barred by res judicata and were untimely, and that the affidavits did not constitute newly discovered evidence and were cumulative of the evidence at trial. The appellate court affirmed. People v. Ortiz, No. 1-01-0368, 337 Ill.App.3d 1159, 300 Ill.Dec. 255, 843 N.E.2d 513 (2003) (unpublished order under Supreme Court Rule 23). As to Ocasio's affidavit, the appellate court held that the evidence was cumulative because it only corroborated the testimony of Estavia and Villariny. It further held that the evidence did not exonerate defendant, since Ocasio did not witness the entire incident. This court denied leave to appeal. People v. Ortiz, 205 Ill.2d 625, 281 Ill.Dec. 90, 803 N.E.2d 494 (2003) (table).
Defendant filed his third pro se postconviction petition on February 17, 2004. His new postconviction counsel substituted a different petition on August 10, 2004. In the petition, defendant again claimed actual innocence based on affidavits from Sigfredo Hernandez, Daniel Huertas, and Victor Ocasio. Ocasio's affidavit was the same affidavit previously submitted as part of defendant's second postconviction petition. Hernandez and Huertas alleged that they saw Oscar, Efrain, and Miguel Renteria beating and kicking the victim in front of Gill Park, and that Oscar and Efrain then chased the victim on bicycles and shot the victim on Sheridan Road near Fremont Street. Both witnesses denied seeing defendant anywhere in the area.
Following a hearing, the trial court issued a written order finding that defendant was entitled to a third-stage evidentiary hearing regarding the testimony of *946 Hernandez and Huertas, but that Ocasio's testimony was barred by res judicata. Huertas did not appear at the hearing. Hernandez testified that he knew defendant because they were both members of the Latin Eagles but that they were not friends. He said defendant was always trying to get him "violated" or "beat up." On June 28, 1992, Hernandez was standing in front of the field house at the park when he saw Oscar, Efrain, and Miguel Renteria beating the victim in front of the park. He heard Renteria say, "that's enough" and walk away from the beating. The victim began "staggering" and "stumbling" to get away, running westbound on Sheridan Road. Hernandez lost sight of the victim for a few minutes when he picked up some marijuana from a friend at the park. As he was leaving, he saw Oscar and Efrain on bicycles chasing the victim on Sheridan. They got off their bicycles, approached the victim, and fired shots at him. Hernandez did not see defendant in the park that night. He did not report his story to police because he was scared of being killed by his fellow gang members. Hernandez moved to Wisconsin at the end of 1992 or the beginning of 1993. He saw defendant's mother in Chicago in 2003 and told her that he knew defendant was not guilty. A few months later, he wrote out his affidavit with a friend's help in order to "get it off [his] chest."
In a written order, the trial court found Hernandez's testimony was insufficient to warrant a new trial. The court stated:
"The two eye-witnesses at the trial knew the defendant and said that the defendant was the shooter. This case did not deal with an identification question but rather a question of credibility and the court found the two eyewitnesses to be credible. Therefore, this court finds that Sigfredo Hernandez' testimony was cumulative when weighed against the other two eye-witnesses who testified during the trial."
On appeal, the State argued that the trial court should not have allowed defendant to file his third postconviction petition because defendant failed to satisfy the cause-and-prejudice test required by section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2006)). The appellate court majority rejected the State's argument and held that, consistent with this court's ruling in People v. Pitsonbarger, 205 Ill.2d 444, 459, 275 Ill.Dec. 838, 793 N.E.2d 609 (2002), where a postconviction petitioner makes a showing of actual innocence, he is excused from the requirements of the cause-and-prejudice test. 385 Ill.App.3d at 9, 324 Ill.Dec. 715, 896 N.E.2d 791. On the merits, the majority held that defendant was entitled to a new trial based on the newly discovered evidence presented to the trial court. 385 Ill.App.3d at 10, 324 Ill.Dec. 715, 896 N.E.2d 791. The trial court's denial of defendant's third petition was reversed and the cause remanded for a new trial. 385 Ill.App.3d at 13, 324 Ill.Dec. 715, 896 N.E.2d 791.
Justice McBride specially concurred in the judgment but argued that the evidence supporting defendant's petition met the requirements of the cause-and-prejudice test, rendering the majority's discussion of the "actual innocence" exception to the test unnecessary. 385 Ill.App.3d at 14, 324 Ill.Dec. 715, 896 N.E.2d 791 (McBride, J., specially concurring). Justice Cahill wrote a dissent arguing that Hernandez's testimony was cumulative of other evidence at trial and thus was insufficient to support a new trial. 385 Ill.App.3d at 13-14, 324 Ill.Dec. 715, 896 N.E.2d 791 (Cahill, J., dissenting).
We granted the State's petition for leave to appeal (210 Ill.2d R. 315), and we allowed the Center on Wrongful Convictions to file an amicus brief on behalf of defendant.

*947 ANALYSIS
A postconviction proceeding is a collateral proceeding rather than an appeal of the underlying judgment and allows review of constitutional issues that were not, and could not have been, adjudicated on direct appeal. Pitsonbarger, 205 Ill.2d at 455-56, 275 Ill.Dec. 838, 793 N.E.2d 609, citing People v. Towns, 182 Ill.2d 491, 502, 231 Ill.Dec. 557, 696 N.E.2d 1128 (1998). "Thus, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of res judicata; issues that could have been raised, but were not, are considered waived." Pitsonbarger, 205 Ill.2d at 456, 275 Ill.Dec. 838, 793 N.E.2d 609, citing Towns, 182 Ill.2d at 502-03, 231 Ill.Dec. 557, 696 N.E.2d 1128. Consistent with these principles, the Post-Conviction Hearing Act generally contemplates the filing of only one postconviction petition. People v. Morgan, 212 Ill.2d 148, 153, 288 Ill.Dec. 166, 817 N.E.2d 524 (2004), citing People v. Lee, 207 Ill.2d 1, 5, 277 Ill.Dec. 655, 796 N.E.2d 1021 (2003). The Act expressly provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2006).
This court has held, however, that the statutory bar to a successive postconviction petition will be relaxed "when fundamental fairness so requires." Morgan, 212 Ill.2d at 153, 288 Ill.Dec. 166, 817 N.E.2d 524; Pitsonbarger, 205 Ill.2d at 458, 275 Ill.Dec. 838, 793 N.E.2d 609, citing People v. Flores, 153 Ill.2d 264, 274, 180 Ill.Dec. 1, 606 N.E.2d 1078 (1992). In Pitsonbarger, we held that fundamental fairness allows the filing of a successive petition only where the petition complies with the cause-and-prejudice test. Pitsonbarger, 205 Ill.2d at 459, 275 Ill.Dec. 838, 793 N.E.2d 609. For purposes of the test, "cause" is defined as "`"`some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim"' in an earlier proceeding." Pitsonbarger, 205 Ill.2d at 460, 275 Ill.Dec. 838, 793 N.E.2d 609, quoting Flores, 153 Ill.2d at 279, 180 Ill.Dec. 1, 606 N.E.2d 1078, quoting McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517, 544 (1991), quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397, 408 (1986). "Prejudice" is shown where the claimed constitutional error "so infected the entire trial that the resulting conviction or sentence violates due process." Pitsonbarger, 205 Ill.2d at 464, 275 Ill.Dec. 838, 793 N.E.2d 609, citing Flores, 153 Ill.2d at 279, 180 Ill.Dec. 1, 606 N.E.2d 1078.
Even where a petitioner cannot show cause and prejudice, "his failure to raise a claim in an earlier petition will be excused if necessary to prevent a fundamental miscarriage of justice." Pitsonbarger, 205 Ill.2d at 459, 275 Ill.Dec. 838, 793 N.E.2d 609. "To demonstrate such a miscarriage of justice, a petitioner must show actual innocence or, in the context of the death penalty, he must show that but for the claimed constitutional error he would not have been found eligible for the death penalty." (Emphasis added.) Pitsonbarger, 205 Ill.2d at 459, 275 Ill.Dec. 838, 793 N.E.2d 609, citing People v. Hudson, 195 Ill.2d 117, 124, 253 Ill.Dec. 712, 745 N.E.2d 1246 (2001), citing Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).
Following our holding in Pitsonbarger, the General Assembly adopted the cause-and-prejudice test in the Act by adding section 122-1(f). See Pub. Act 93-493, eff. January 1, 2004 (amending 725 ILCS 5/122-1). Section 122-1(f) provides, in its entirety:
"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may *948 be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2006).
The State contends that all successive postconviction petitions, including those alleging claims of actual innocence, are subject to the cause-and-prejudice test under the Act because section 122-1(f) does not include any exceptions. The State argues that under the clear and unambiguous language of the statute, a successive petition may be filed only after a demonstration of both cause and prejudice, with no enumerated exceptions. Thus, according to the State, the General Assembly's failure to express an "actual innocence exception" leads to the conclusion that none was intended.
We disagree with the State's contention and, in light of Pitsonbarger, we hold that in a nondeath case, where a defendant sets forth a claim of actual innocence in a successive postconviction petition, the defendant is excused from showing cause and prejudice. The legislature did nothing to overrule that holding when it enacted section 122-1(f). Presumably, the legislature was aware of our holding in Pitsonbarger when it amended the Act, yet it did not expressly subject actual innocence claims to the test. See People v. De La Paz, 204 Ill.2d 426, 433, 274 Ill.Dec. 397, 791 N.E.2d 489 (2003) ("`"[w]here statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law"'"), quoting Burrell v. Southern Truss, 176 Ill.2d 171, 176, 223 Ill.Dec. 457, 679 N.E.2d 1230 (1997), quoting People v. Hickman, 163 Ill.2d 250, 262, 206 Ill.Dec. 94, 644 N.E.2d 1147 (1994). Subsequent to the statutory amendment, the appellate court has recognized in numerous cases the continued validity of our holding in Pitsonbarger. See, e.g., People v. Coleman, 381 Ill.App.3d 561, 568, 319 Ill.Dec. 771, 886 N.E.2d 534 (2008); People v. Daniel, 379 Ill.App.3d 748, 750, 319 Ill. Dec. 620, 886 N.E.2d 383 (2008); People v. Adams, 373 Ill.App.3d 991, 995, 311 Ill. Dec. 843, 869 N.E.2d 856 (2007); People v. Smith, 352 Ill.App.3d 1095, 1100, 288 Ill. Dec. 332, 817 N.E.2d 982 (2004); People v. Manrique, 351 Ill.App.3d 277, 280, 286 Ill. Dec. 402, 813 N.E.2d 1095 (2004). In 2007, this court reiterated that "[w]here, as here, the death penalty is not involved and the defendant makes no claim of actual innocence, Illinois law prohibits the defendant from raising an issue in a successive postconviction petition unless the defendant can establish a legally cognizable cause for his or her failure to raise that issue in an earlier proceeding and actual prejudice would result if defendant were denied consideration of the claimed error." (Emphasis added.) People v. Brown, 225 Ill.2d 188, 206, 310 Ill.Dec. 561, 866 N.E.2d 1163 (2007), citing Pitsonbarger, 205 Ill.2d at 459-60, 275 Ill.Dec. 838, 793 N.E.2d 609. We therefore reject the State's contention that all successive petitions claiming actual innocence are subject to the test.
Moreover, we note that the State's interpretation of the statute is incompatible with a defendant's constitutional right to assert an actual innocence claim in Illinois. This court has held that the due process clause of the Illinois Constitution affords postconviction petitioners the right *949 to assert a freestanding claim of actual innocence based on newly discovered evidence. Morgan, 212 Ill.2d at 154, 288 Ill.Dec. 166, 817 N.E.2d 524, citing People v. Washington, 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (1996) ("We believe that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence"). The State concedes in its reply brief that "it is difficult, if not impossible, to imagine a scenario where a meritorious [actual innocence] claim could not meet the cause-and-prejudice test." Although we share the State's difficulty in imagining such a scenario, we cannot agree with the State's proposed construction of the statute, which theoretically could bar a petitioner from filing a freestanding actual innocence claim. This we cannot allow as a matter of substantive and procedural due process under the Illinois Constitution. Washington, 171 Ill.2d at 487-88, 216 Ill.Dec. 773, 665 N.E.2d 1330. Statutes must be read in a manner that makes them constitutional, when reasonable to do so. People v. Geever, 122 Ill.2d 313, 324, 119 Ill.Dec. 341, 522 N.E.2d 1200 (1988). We reject the State's construction of the statute as antithetical to a petitioner's Illinois due process rights.
Alternatively, the State argues that even if a petitioner's first successive postconviction petition based on actual innocence need not comply with the cause-and-prejudice test, subsequent petitions are subject to the test because they present the same "claim." The State further contends that the appellate majority's interpretation would allow unlimited "piecemeal" petitions as long as the pleadings are couched in terms of actual innocence.
The State's concern is unwarranted. "The preclusion doctrines of res judicata, collateral estoppel, and law of the case prevent a defendant from `taking two bites out of the same appellate apple'" and avoid "piecemeal post-conviction litigation." People v. Tenner, 206 Ill.2d 381, 395, 398, 276 Ill.Dec. 343, 794 N.E.2d 238 (2002), quoting People v. Partee, 125 Ill.2d 24, 37, 125 Ill.Dec. 302, 530 N.E.2d 460 (1988). Where a defendant presents newly discovered, additional evidence in support of a claim, collateral estoppel is not applicable because it is not the same "claim." Tenner, 206 Ill.2d at 397-98, 276 Ill.Dec. 343, 794 N.E.2d 238; People v. Enis, 163 Ill.2d 367, 386, 206 Ill.Dec. 604, 645 N.E.2d 856 (1994); People v. Armstrong, 56 Ill.2d 159, 161, 306 N.E.2d 14 (1973); People v. Williams, 392 Ill.App.3d 359, 368, 331 Ill. Dec. 218, 910 N.E.2d 627 (2009). In the instant case, although defendant's first two petitions also alleged actual innocence, defendant's third petition presented a new "claim" of actual innocence because it offered two additional eyewitnesses who were previously unknown to defendant. Defendant is not precluded from raising multiple claims of actual innocence where each claim is supported by newly discovered evidence.
Turning to the merits of the petition, we review the circuit court's denial of a postconviction petition following an evidentiary hearing to determine whether it was manifestly erroneous. Morgan, 212 Ill.2d at 155, 288 Ill.Dec. 166, 817 N.E.2d 524; People v. Coleman, 183 Ill.2d 366, 385, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998). "Manifest error" is defined as "error which is `"clearly evident, plain, and indisputable."'" Morgan, 212 Ill.2d at 155, 288 Ill.Dec. 166, 817 N.E.2d 524, quoting People v. Johnson, 206 Ill.2d 348, 357-60, 276 Ill.Dec. 399, 794 N.E.2d 294 (2002), quoting People v. Ruiz, 177 Ill.2d 368, 384-85, 226 Ill.Dec. 791, 686 N.E.2d 574 (1997).
The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly *950 discovered evidence. Morgan, 212 Ill.2d at 154, 288 Ill.Dec. 166, 817 N.E.2d 524; People v. Washington, 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (1996). "Procedurally, such claims should be resolved as any other brought under the Act." Washington, 171 Ill.2d at 489, 216 Ill.Dec. 773, 665 N.E.2d 1330. Substantively, the evidence in support of the claim must be newly discovered; material and not merely cumulative; and "of such conclusive character that it would probably change the result on retrial." Morgan, 212 Ill.2d at 154, 288 Ill.Dec. 166, 817 N.E.2d 524, citing People v. Barrow, 195 Ill.2d 506, 540-41, 255 Ill.Dec. 410, 749 N.E.2d 892 (2001); Washington, 171 Ill.2d at 489, 216 Ill.Dec. 773, 665 N.E.2d 1330.
The State contends that Hernandez's testimony did not constitute "newly discovered" evidence because it was substantially the same accounting of events in Victor Ocasio's affidavit submitted as part of defendant's second postconviction petition. The State argues that defendant's third petition was a blatant attempt to re-present evidence that was previously rejected as a basis for new trial. The State's argument misapprehends the standard for "newly discovered" evidence, defined as evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence. Morgan, 212 Ill.2d at 154, 288 Ill.Dec. 166, 817 N.E.2d 524; People v. Molstad, 101 Ill.2d 128, 134, 77 Ill.Dec. 775, 461 N.E.2d 398 (1984), citing People v. Baker, 16 Ill.2d 364, 374, 158 N.E.2d 1 (1959). Hernandez did not admit to his having witnessed the incident until more than 10 years after trial when he spoke to defendant's mother. According to his affidavit, Hernandez was standing in front of the field house at the park, where he would not have been seen by defendant, who claimed he was drinking beer in the back of the park. Hernandez essentially made himself unavailable as a witness when he moved to Wisconsin shortly after the murder. Moreover, Hernandez's testimony differed substantially from Ocasio's affidavit because Hernandez witnessed both the beating and the shooting, whereas Ocasio only witnessed the shooting on Sheridan Road. We find that Hernandez's testimony qualifies as newly discovered evidence.
In addition to being newly discovered, evidence in support of an actual innocence claim must be material to the issue and not merely cumulative of other trial evidence. The State first contends that the appellate majority failed to afford proper deference to the trial court's credibility findings. In its written opinion denying the third postconviction petition, the trial court found:
"This case did not deal with an identification question but rather a question of credibility and the court found the two eyewitnesses to be credible. Therefore, this court finds that Sigfredo Hernandez's testimony was cumulative when weighed against the other two eye-witnesses who testified during the trial."
Significantly, the court made no findings on Hernandez's credibility. It merely found that Hernandez's testimony was cumulative of Estavia's and Villariny's testimony. We fail to see how the appellate court opinion ignored the trial court's credibility findings when the court made no such findings with regard to Hernandez.
The sole basis of the trial court's decision was that Hernandez's testimony was cumulative of Estavia's and Villariny's testimony. Evidence is considered cumulative when it adds nothing to what was already before the jury. See Molstad, 101 Ill.2d at 135, 77 Ill.Dec. 775, 461 N.E.2d 398. In support of its contention that Hernandez's testimony was cumulative of other evidence presented at trial, the State relies on People v. Smith, 177 Ill.2d 53, 226 Ill.Dec. 425, 685 N.E.2d 880 (1997). In *951 Smith, the defendant was convicted of the murder of Valerie McDonald. At trial, Iris Harrison, an inmate at the Cook County jail, testified that codefendant Marva Golden told her the defendant had nothing to do with the murder. In a motion for a new trial, the defendant sought to introduce the statements of nine additional inmates who had also been told by Golden that the defendant was not involved in the murder. Smith, 177 Ill.2d at 81-82, 226 Ill.Dec. 425, 685 N.E.2d 880. On appeal, this court affirmed the trial court's denial of the defendant's posttrial motion. We held that the evidence could, at best, be viewed as impeachment of a prosecution witness, which is an insufficient basis for granting a new trial. Smith, 177 Ill.2d at 82-83, 226 Ill.Dec. 425, 685 N.E.2d 880. Moreover, the new testimony of the nine inmates was merely cumulative to the trial testimony of Harrison and would not have changed the result had it been introduced at trial. Smith, 177 Ill.2d at 86, 226 Ill.Dec. 425, 685 N.E.2d 880.
In contrast to the newly offered evidence in Smith, Hernandez's testimony supplied a first-person account of the incident that directly contradicted the prior statements of the two eyewitnesses for the prosecution. This testimony was not merely cumulative to Dunlam's testimony supporting defendant's alibi defense, or to Estavia's and Villariny's recantations of their prior statements. Rather, it added to what was before the fact finder.
This case is similar to Molstad, in which the defendant filed a motion for new trial and submitted the affidavits of his five codefendants, all of whom alleged that the defendant was not present during the attack on the victim. Molstad, 101 Ill.2d at 132, 77 Ill.Dec. 775, 461 N.E.2d 398. At trial, the State offered one eyewitness who testified that defendant was present during the crime. None of the codefendants testified because of the risk of self-incrimination. We affirmed the appellate court's decision to vacate defendant's conviction and remanded for a new trial on the basis of the newly discovered evidence. We held that the evidence was not cumulative because it went to "an ultimate issue in the case: Who was present at the time of the attack * * *?" Molstad, 101 Ill.2d at 135, 77 Ill.Dec. 775, 461 N.E.2d 398. Although the defendant offered alibi testimony at trial, the introduction of the five codefendants' statements at the posttrial stage raised additional questions concerning the trial court's verdict. Molstad, 101 Ill.2d at 135, 77 Ill.Dec. 775, 461 N.E.2d 398.
In the case at bar, Hernandez's testimony conflicted with the State's main witnesses on the central issue of who beat and killed the victim. Hernandez testified that defendant was not present during either the beating or the shooting, in contrast to the prior statements by Estavia and Villariny. His testimony that no shots were fired during the beating or at any time directly in front of the park or the field house also differed significantly from the State's witnesses' accounts. No other defense witness at trial offered the evidence presented by Hernandez. The trial court's finding that Hernandez's testimony was cumulative of other evidence was manifestly erroneous.
Finally, we consider whether the evidence offered by defendant "is of such a conclusive character that it would probably change the result of retrial." People v. Harris, 206 Ill.2d 293, 301, 276 Ill.Dec. 286, 794 N.E.2d 181 (2002). The newly discovered evidence directly contradicts the recanted testimony of the two prosecution witnesses, Estavia and Villariny. During cross-examination at the evidentiary hearing, the State was unable to discredit Hernandez's testimony that he witnessed both the beating and the shooting, *952 and that defendant was not present during either event. No physical evidence linked defendant to the murder. Thus, at retrial, the evidence of defendant's innocence would be stronger when weighed against the recanted statements of the State's eyewitnesses. The fact finder will be charged with determining the credibility of the witnesses in light of the newly discovered evidence and with balancing the conflicting eyewitness accounts. As we said in Molstad, "this does not mean that [defendant] is innocent, merely that all of the facts and surrounding circumstances, including the testimony of [defendant's witnesses], should be scrutinized more closely to determine the guilt or innocence of [defendant]." Molstad, 101 Ill.2d at 136, 77 Ill. Dec. 775, 461 N.E.2d 398.
Defendant has met the criteria to warrant a new trial based on the evidence supporting his actual innocence claim. Accordingly, we affirm the appellate court's judgment, which reversed the trial court's judgment and remanded the cause for a new trial.
Appellate court judgment affirmed.
Chief Justice FITZGERALD and Justices FREEMAN, THOMAS, KILBRIDE, GARMAN, and KARMEIER concurred in the judgment and opinion.