2020 IL App (2d) 180323-U
No. 2-18-0323
Order entered November 12, 2020

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-CF-1485 |
| DERRICK D. JORDAN, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) | Thomas J. Stanfa, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's judgment denying defendant's postconviction petition after a third-stage evidentiary hearing on his claim of actual innocence where the court's finding that the new witness's testimony was not reliable was not manifestly erroneous, and the new evidence would not have changed the result on retrial, due to the four eyewitnesses who identified defendant as the shooter.

¶ 2    Following a jury trial, defendant, Derrick D. Jordan, and two of his brothers, Teolia M. Jordan, and Steven T. Jordan[1], were each convicted of seven counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2004)); (720 ILCS 5/9-1(a)(1) (West 2004)) arising out of a June 22, 2004, shooting incident, wherein several men shot at Kalvin Stewart, Gregory Warfield, and others in front of 1134 Kane Street in Aurora, in broad daylight. No physical evidence connected defendant to the crimes, but he was identified at trial by four eyewitnesses. After defendant and his brothers were found guilty, defendant was sentenced to seven concurrent terms of 17½ years in the Department of Corrections.

¶ 3    In 2017 defendant filed an amended postconviction petition asserting his actual innocence and alleging that his due process rights were violated. Following a third-stage evidentiary hearing, the trial court denied his petition and defendant now appeals. For the reasons that follow, we affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5                          A. Trial Evidence and Proceedings

¶ 6    We begin by summarizing the evidence adduced at defendant's trial. Gregory Warfield testified that at about 3:15 p.m. on June 22, 2004, he was outside his house on Kane Street wiping down his car in his driveway. Gregory saw defendant and his two brothers and codefendants, Teolia and Steven, get out of a beige truck and walk up the street toward him and his friends, Ronnie Green, Casey Stewart, Kalvin "BoPeep" Stewart, and "Papoo," whose real name Gregory could not remember. Defendant, Teolia and Steven had guns. They chased after Kalvin Stewart

---

[1] The denial of Steven T. Jordan's postconviction petition alleging actual innocence is the subject of a separate appeal, No. 2-18-0322.

and Papoo, shooting at them. Gregory noticed a fourth person but did not recognize him. This fourth person pointed his gun at Gregory and fired four shots. Defendant, Teolia, and Steven did not shoot at Gregory. Defendant, Teolia, and Steven were dressed in black, but they were not wearing hoods on their heads. Gregory called the police, and they arrived 12 to 15 minutes later.

¶ 7    Gregory testified that "TD, Stevie, and [defendant]" were the shooters, but that he did not know at whom they were shooting. Gregory admitted that he lied to the police about not knowing who BoPeep and Papoo were because they were his friends and he did not want to get them involved. On June 28, 2004, Gregory identified defendant, Teolia, and Steven as the shooters in a photo lineup at the Aurora police station.

¶ 8    Gregory also testified that there was some animosity between Kalvin Stewart and defendant, and Gregory may have told an assistant state's attorney that Kalvin Stewart shot back. Gregory admitted that he was a convicted felon. He had been convicted of possession of a controlled substance with intent to deliver and unlawful possession of a firearm by a felon.

¶ 9    Ronnie Green testified that he was at Gregory's house on Kane Street just before the shooting, when he saw four men dressed in black, carrying guns, running on the sidewalk. They were not wearing hoodies. Green identified three of the men as defendant, Teolia, and Steven. Defendant and Steven shot at BoPeep (Kalvin Stewart) and Papoo. Green initially denied identifying defendant, Teolia, and Steven at the scene, but later claimed that he told the police that "TD, Stevie, and [defendant]" were the shooters. Green denied that he was merely repeating what he heard Gregory tell the police. Green told the police that he did not know the two men (BoPeep and Papoo) being shot at because he wanted to protect his friends and "associates." On June 29, 2004, during a photo lineup, Green told the police he did not recognize anyone because he did not want to get involved. Green admitted that he was a convicted felon; he was convicted of unlawful

possession of a controlled substance, delivery of a controlled substance, and delivery of a look-a-like substance.

¶ 10    Casey Stewart testified that on the day of the shooting he drove to Warfield's house at about 2:30 p.m. About 20 minutes later he saw defendant in black clothes with a dark object in his hand. Casey thought "it was going to start shooting," so he ran into the Warfields' house. Casey testified that defendant was alone. Casey left the scene before the police arrived, but he identified defendant three months after the shooting when the police asked him about it. He identified defendant as the person he saw on June 22, 2004, in a photo lineup. Casey did not know of any animosity between Kalvin Stewart and defendant, but he heard they were dating the same girl.

¶ 11    Patsy Harris, a hearing-impaired individual, testified through a sign-language interpreter that on the day of the shooting she was at her cousin Vivian's house on Kane Street. Harris saw four people wearing hoods pull up and walk by. They started shooting. Harris could not identify defendant, Teolia, or Steven as the shooters, and she did not see them at the scene of the shooting. The police showed Harris a photo lineup nine months after the shooting, but there was no sign-language interpreter present. Harris identified only Teolia as one of the shooters, because the police asked her only about his photo. Harris asked the state's attorney's office to relocate her because she was afraid.

¶ 12    Destiny Anderson testified that on the day of the shooting she was outside her home on Kane Street when she saw two or four people come out of nowhere and start shooting. She did not know at whom they were shooting. When she heard the gunshots, she ran inside her house. Anderson did not see the shooters because they were wearing black sweatshirts with hoods pulled up over their heads. At the scene of the shooting Anderson told the police that defendant, Teolia,

and Steven were the shooters. Anderson testified that she said this because her uncle, Gregory Warfield, told her that it was defendant, Teolia, and Steven, and she repeated this to the police.

¶ 13    Vivian Warfield, a hearing-impaired individual, testified through a sign-language interpreter that, on the day of the shooting she was outside her home on Kane Street with her family.   She noticed four men walk by dressed in dark clothes. She felt and heard shots fired so she crouched down underneath her car. Vivian found out right after the shooting that it was the Jordan brothers. Vivian testified that she could not identify defendant, Teolia, or Steven, as the shooters. She did not see them at the scene of the shooting. Vivian explained that she identified defendant, Teolia, and Steven as the shooters to the police at the scene of the shooting because her great-niece, Destiny, told her they were the shooters. When the police spoke to her, the following day they did not bring a sign-language interpreter, but Destiny interpreted for Vivian. During cross-examination Vivian testified that the only reason she identified defendant, Teolia, and Steven out of a photo lineup the following day is because she knew they were brothers and she knew them. On redirect Vivian testified that she was afraid.

¶ 14    James "Papoo" Fultz, a convicted felon, testified that he was on Kane Street in front of Gregory Warfield's house with his friend BoPeep (Kalvin Stewart), when Kalvin said, "there they go" and shots were fired. Fultz and Kalvin ran in different directions. Fultz could not identify the shooters and denied telling the police that he recognized defendant as one of the shooters.

¶ 15    Aurora police detective Martin Sigsworth testified that on September 15, 2004, he interviewed Fultz. Fultz told Sigsworth that on June 22, 2004, he was talking to Kalvin Stewart when defendant and another person started shooting at them. Sigsworth also testified that the day after the shooting he met with Vivian Warfield at a driveway on Kane Street. Sigsworth knew Vivian was deaf, but he did not bring a sign-language interpreter. However, Vivian indicated that

she could read lips. Vivian identified defendant, Teolia, and Steven as the shooters in a photo lineup. Vivian pointed to a photo of defendant, but Vivian did not use his name. She said defendant had a gun.

¶ 16    Aurora police officer Douglas Podschweit testified that at approximately 3:15 p.m. on the day of the shooting, he went to Kane Street following a dispatch call of shots fired. Gregory Warfield told him that the shooters were "the Jordans," specifically, defendant, "TD Jordan," and Steven Jordan. Gregory said that a fourth person also fired shots. Green told Podschweit that the shooters were "the Jordans," but Green did not use their first names. Green may have heard what Gregory told Podschweit. Destiny Anderson told Podschweit that she knew that three of the four shooters were "the Jordans" but did not know who the fourth shooter was.

¶ 17    Aurora police detective Wayne Biles testified that during a photo lineup conducted on June 28, 2004, Gregory Warfield identified defendant, Teolia, and Steven as the shooters. On June 29, 2004, Green met with Biles when he checked in for parole. Green did not identify anyone during a photo lineup. Green told Biles that when he named defendant, Teolia, and Steven as the shooters at the scene, he was only repeating what he heard Gregory tell the police. Green told Biles that he could not say it was "the Jordans." On September 20, 2004, Green identified defendant, Teolia, and defendant as the shooters in another photo lineup, and Kendrick Elliott as the person who shot him.

¶ 18    Defense witness, Latrina Fitzpatrick, Teolia's girlfriend, testified that on the day of the shooting she and Teolia threw a party for Teolia's son at their home. Teolia was home all day in the courtyard, grilling food. Latrina saw Steven at the party but did not see defendant.

¶ 19    The jury found defendant guilty of attempted first degree murder, and the trial court sentenced defendant to seven terms of 17½ years' imprisonment to run concurrently.

¶ 20                                    B. Post-Conviction Proceedings

¶ 21    Defendant and his brothers, again represented by the same attorney (this time, from the Office of the State Appellate Defender), appealed to this court. We affirmed their convictions in a consolidated disposition. See *People v. Jordan*, Nos. 2-06-1147, 2-06-1148, & 2-06-1149 cons. (2009) (unpublished order under Supreme Court Rule 23). In February 2010, defendant, Teolia, and Steven filed a joint postconviction petition through counsel. In April 2010 counsel filed a supplemental postconviction petition on behalf of defendant. That attorney withdrew from representing defendant, Teolia, and Steven. In March 2017, new counsel filed an amended postconviction petition on behalf of defendant alleging, *inter alia*, a claim of actual innocence.

¶ 22    The amended petition included two affidavits, one of Jesus Quintanilla and one of Kalvin Stewart. Quintanilla averred that after he was paroled from prison in 2005, he met with Daniel Mata in Aurora. Quintanilla knew Mata previously, and they had a long conversation. Mata told Quintanilla that he witnessed the June 2004 shooting on Kane Street and that neither defendant nor Steven were the shooters.

¶ 23    The petition noted that Mata was in federal custody in Texas facing charges and that defense counsel was unable to interview him to determine the truthfulness of Quintanilla's or Mata's versions of events.

¶ 24    Also attached to the amended petition was an affidavit of Kalvin Stewart dated June 21, 2016. Kalvin attested that he was on Kane Street on June 22, 2004, when the shooting occurred. Kalvin stated that he saw the four shooters clearly and was certain that defendant was not one of them. He knew defendant for approximately 18 years at that point. Kalvin never spoke to the police about the shooting because he did not want to get involved. Finally, Kalvin averred, "Only now

am I willing to come forward with the information that I know about the shooting, because [defendant] has been convicted of a shooting that he did not do and was not involved with."

¶ 25    The State moved to dismiss all of defendant's claims in the 2010 and 2017 petitions. The court granted the State's motion as to all but defendant's actual innocence claim. The State noted in its answer to defendant's actual innocence claim, that in Teolia's postconviction case, affidavits of Kalvin Stewart and Gregory Warfield were filed. The State also noted that in Teolia's case, we determined that Kalvin's affidavit was newly discovered evidence that warranted an evidentiary hearing regarding Teolia's actual innocence claim. See *People v. Teolia Jordan*, 2016 IL App (2d) 130463-U. The State also noted that although Gregory had recanted his earlier identification of Teolia and provided an affidavit in support of Teolia's postconviction petition, Gregory reaffirmed his earlier identification of defendant and Steven as the shooters. The State also denied the assertions made in Kalvin's affidavit.

¶ 26    On March 21, 2018, the trial court held an evidentiary hearing on defendant's and Steven's postconviction petitions at which Kalvin Stewart was the sole witness.

¶ 27    Kalvin Stewart testified as follows. In 2004 his nickname was BoPeep. Kalvin had known defendant and Steven for "[p]robably over 30 years," and he identified them in court. On the day of the shooting at about 3:15 Kalvin was walking on Kane Street with Fultz when "some shooting went on." Kalvin saw the shooters. He was about 60 to 70 feet away from them and two houses away from the Warfield house. Shots were fired in his direction. Kalvin and James Fultz ran away together. Fultz's nickname was Papoo. Neither of the shooters were defendant or Steven Jordan. Kalvin testified that he was not the intended victim of the shooting. Kalvin did not speak with the police about the shooting because the state's attorney's office did not contact him. Had that office contacted Kalvin, he doubted whether he would have spoken with them. After the shooting the

police did not talk to Kalvin and he did not seek them out to tell them what he knew. The assistant State's attorney asked, "Would it be fair to say that you and the police did not see eye to eye back then?" Kalvin replied, "Correct." Kalvin testified that he would not assist the police in their investigation. He would not have spoken with defense counsel's investigator either.

¶ 28     Kalvin also testified that he was incarcerated in 2008 for federal and state narcotics convictions for which he served eight years. Kalvin was not in custody when defendant's trial took place in 2005, and he was not aware of the trial, testifying:

> "Well, actually, I didn't know they was [*sic*] charged with shooting at us, period. I just heard that they lost on trial or something for shooting on Kane Street or some stuff like that, but I never was told about them, you know, being charged for shooting at us. I never was told that."

Kalvin testified that he did not know that defendant had been charged until he saw it "in the newspaper" but "I can't tell you the exact date."

¶ 29     After Kalvin's testimony, defense counsel noted that Quintanilla was under subpoena but not in court that day. The court took a short recess while counsel tried to find Quintanilla, but when he could not, counsel told the court he had been instructed by defendant to proceed with Quintanilla. Instead, defense counsel asked the court to consider his affidavit, and the court agreed to do so.

¶ 30     On March 21, 2018, after argument, the trial court found that Kalvin Stewart was not credible and recounted the evidence against defendant provided at trial. The court also determined that the statements contained in Quintanilla's affidavit regarding Mata's statements to him were hearsay. Further, there was no affidavit of Mata. Therefore, the trial court gave Quintanilla's

affidavit "the weight to which it's deserved." Thereafter, the court denied defendant's actual innocence claim and dismissed his amended postconviction petition.

¶ 31    On March 27, 2018, defendant filed a motion for reconsideration that the trial court denied on April 12, 2018. Defendant filed his notice of appeal on April 26, 2018.

¶ 32                                    II. ANALYSIS

¶ 33    The Post-Conviction Hearing Act provides a three-stage procedure by which a criminal defendant can assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1 *et seq.* (West 2018). At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed within that 90-day period, the circuit court must docket it for further consideration. 725 ILCS 5/122-2.1(b) (West 2018).

¶ 34    At the second stage of postconviction proceedings, counsel may be appointed for defendant, if defendant is indigent. 725 ILCS 5/122-4 (West 2018). After counsel has made any necessary amendments to the petition, the State may move to dismiss a petition or an amended petition pending before the court. 725 ILCS 5/122-5 (West 2018). If that motion is denied, or if no motion to dismiss is filed, the State must answer the petition, and, barring the allowance of further pleadings by the court, the proceeding then advances to the third stage, a hearing wherein the defendant may present evidence in support of the petition. 725 ILCS 5/122-6 (West 2018).

¶ 35    At a third-stage hearing the defendant must show by a preponderance of the evidence a substantial violation of a constitutional violation. *People v. Coleman*, 2013 IL 113307, ¶ 92. The trial court serves as the fact finder and, therefore, it is the court's function to determine witness

credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts. See *People v. English*, 2013 IL 112890, ¶ 23. Thus, we will not reverse the court's denial of a postconviction petition following an evidentiary hearing unless the denial was manifestly erroneous. See *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). A decision is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009).

¶ 36    The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered evidence. *Id*. at 333. Evidence in support of a claim of actual innocence must be: (1) newly discovered; (2) not discoverable earlier through the exercise of due diligence; (3) material and not merely cumulative; and (4) of such conclusive character that, when considered along with the evidence that was presented at trial, the new evidence would probably change the result on retrial. *People v. Sanders*, 2016 IL 118123, ¶ 24.

¶ 37    Defendant argues that the trial court erred by denying his amended postconviction petition because Kalvin Stewart's testimony that defendant was not the shooter was conclusive evidence that would likely change the result on retrial. The State counters that Kalvin's testimony was not conclusive evidence that would probably change the result on retrial because Kalvin was not credible.

¶ 38    The purpose of the third-stage evidentiary hearing in this case was to determine whether the new evidence was of such conclusive character that it would probably change the result on retrial. To make this determination, the trial court was required to assess the credibility of Kalvin Stewart. Our supreme court has described the role of the trial court as follows: "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility,

decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34; see also *People v. Gonzalez*, 407 Ill.App.3d 1026, 1036 (2011) ("Credibility determinations such as this [at a third-stage evidentiary hearing] are properly made by the trier of fact, and we have no basis in the record for second-guessing the trial court's judgment"). This is a comprehensive approach and involves credibility determinations that are uniquely appropriate for trial judges to make." *People v. Coleman*, 2013 IL 113307, ¶ 97.

¶ 39    The trial court did not commit manifest error in its finding that Kalvin's testimony at the evidentiary hearing was unreliable. Kalvin's testimony that defendant was not one of the shooters was contradicted by five witnesses, four who identified defendant as one of the shooters, and one who placed defendant at the scene of the shooting. Gregory Warfield identified defendant as one of the shooters to the police immediately after the shooting and in open court during trial. Ronnie Green identified defendant in a photo lineup and in open court at trial. At trial, Casey Stewart identified defendant as the man wearing black carrying a black object at the scene of the shooting. Vivian Warfield identified defendant as one of the shooters in a photo lineup. At the scene of the shooting, Destiny Anderson identified defendant as one of the shooters. Although Vivian and Destiny recanted their identifications of defendant at trial, Vivian explained that she was afraid, and we note that recantations are inherently unreliable. See *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 40    In addition, contrary to Kalvin's testimony, Fultz testified at trial that he and Kalvin ran in different directions when shots were fired. Kalvin testified that they ran together and did not "break apart." The testimony of the witnesses that defendant was the shooter, taken together with the other discrepancies between various witnesses' testimony and Kalvin's testimony, support the trial court's finding that Kalvin was not credible. We also note that Kalvin gave no explanation for why

he waited 12 years to come forward with his allegedly exculpatory information. Thus, Kalvin's testimony was not of such a conclusive character that, when considered along with the trial evidence, would probably lead to a different result on retrial. Accordingly, the trial court's denial of defendant's amended postconviction petition was not manifestly erroneous.

¶ 41 Defendant cites *Ortiz*, 235 Ill. 2d 319, to support his argument. In *Ortiz*, our supreme court granted the defendant a new trial based on the testimony of a newly discovered additional eyewitness. The court held that the testimony was newly discovered where the witness did not admit to having witnessed the incident until more than 10 years after trial and made himself unavailable as a witness when he moved to a neighboring state shortly after the murder. *Id*. at 325. However, in *Ortiz*, the trial court did not assess the credibility of the testimony provided by the new witnesses. Here, the court found that Kalvin was not credible. Thus, *Ortiz* is distinguishable from this case.

¶ 42 Defendant also contends that Quintanilla's affidavit supports his claim of actual innocence. Because the Rules of Evidence are "inapplicable" to postconviction proceedings (See Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019)), hearsay can be considered in postconviction hearings. During a third-stage evidentiary hearing, the court decides the weight to be given the hearsay evidence and resolves any evidentiary conflicts. See *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 118. As to a claim of actual innocence at the third stage, the court must necessarily consider whether the new evidence would ultimately be admissible at retrial. *Id*. Here, Quintanilla's averment that Mata told him that defendant was not one of the shooters was contradicted by four eyewitnesses who identified defendant as one of the shooters. Thus, even taken as true, Quintanilla's averments would not have changed the result on retrial.

¶ 43    Finally, we take judicial notice of *People v. Teolia Jordan*, 2016 IL App (2d) 130463-U. See *Ortiz*, 196 Ill. 2d at 265 (the supreme court took judicial notice of a Rule 23 order in a codefendant's case). In *Teolia Jordan*, we vacated the trial court's dismissal of Teolia's claim of actual innocence during the second stage of a postconviction proceeding, and we remanded the case for a third-stage evidentiary hearing. *Id*. ¶ 49. In *Teolia Jordan*, Kalvin Stewart's 2012 affidavit was supported by other evidence not present in this case, namely, Teolia's alibi testimony that was corroborated by four witnesses and Gregory Warfield's affidavit wherein he recanted of his identification of Teolia of one of the shooters, leaving Green as the only eyewitness implicating Teolia. *Teolia Jordan*, 2016 IL App (2d) 130463-U, ¶ 47. Most notable for our purposes here, in his affidavit Gregory Warfield reaffirmed his identification of defendant and Steven as the shooters. *Id*. ¶ 33.

¶ 44    In this case Kalvin provided no expanation regarding why he provided an affidavit in Teolia's case in 2012 but waited until 2016, 12 years after the shooting, to provide an affidavit in this case. This fact, while not dispositive, supports the trial court's finding that Kalvin was not credible. Further, Gregory Warfield's averment in Teolia's case renaming defendant as one of the shooters, supports our conclusion that Kalvin's and Quintanilla's averments would not have changed the result on retrial.

¶ 45    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 46                                        III. CONCLUSION

¶ 47    The judgment of the circuit court of Kane County is affirmed.

¶ 48    Affirmed.