**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190759-U

Order filed April 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0759 Circuit No. 14-CF-471 |
| ALLEN STEVE FITZPATRICK JR., | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Lytton and McDade concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:  The circuit court erred by summarily dismissing defendant's postconviction petition.

¶ 2   Defendant, Allen Steve Fitzpatrick Jr., appeals the Peoria County circuit court's summary dismissal of his postconviction petition. Defendant contends the court erred, as his petition made an arguable claim of actual innocence. We reverse and remand.

¶ 3                              I. BACKGROUND

¶ 4    The State charged defendant with three counts of first degree murder (720 ILCS 5/9-1(a) (2), (a)(3) (West 2006)), aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and attempted mob action (*id.* § 8-4(a), 25-1(a)(1)).

¶ 5    The evidence at trial showed that on March 15, 2006, at approximately 8 p.m., Jennifer Lindler and her aunt, Robbin Underwood, met with Micah Forman to purchase crack cocaine. After exiting Underwood's truck, Lindler heard Forman yell "gun," and then heard gunshots. Lindler reentered the truck and hid under the dashboard. Lindler was shot and moved to the backseat where she lost consciousness. Lindler suffered six gunshot wounds. Lindler did not see who shot at her. When she regained consciousness, Lindler saw Underwood slumped over the wheel of the truck. Underwood died from a gunshot wound to her head.

¶ 6    Forman indicated that on March 15, 2006, around 8 p.m., he met with two women to sell drugs. At the time, Forman was a member of the Black Disciples gang. One woman exited a truck, and a car pulled up. Forman heard several gunshots and saw two people shooting. Forman ran from the scene. Forman identified defendant from a photographic lineup as one of the two men shooting. At trial, Forman could not identify the shooters. Forman explained that he initially identified defendant as one shooter because Forman had a feud with defendant's gang at the time.

¶ 7    Ronald Lee testified that in 2006 he was the leader of the Peastones gang. Other members included defendant, Anthony King, and Johnny Marizetts. Mike Johnson and Johnny Sims were members of the Wiswall Boys gang. Two members of the Wiswall Boys had been killed by members of the No Love gang, causing a feud between the two gangs. According to Lee, Forman was a member of the No Love gang. Sims and defendant approached Lee about using Lee's gun

2

to shoot Forman. Lee observed that defendant already had a gun and gave Sims one of his guns. Sims and defendant left with King. The next day, defendant told Lee he believed they had shot Forman. Lee informed defendant they did not shoot Forman and instead shot two women.

¶ 8        King stated that a few days after the murder of the Wiswall Boys members, Sims drove King's vehicle around Peoria with Johnson, Marizetts, and defendant. When someone spotted Forman and a woman, Sims stopped the vehicle. Forman ran, and the woman ran toward a truck. Johnson, Sims, Marizetts, and defendant exited King's vehicle, ran toward the truck, and fired their guns. King fled on foot. After the shooting, King rejoined Johnson, Marizetts, Sims and defendant in his vehicle.

¶ 9        Starceya Johnson, the mother of defendant's child, testified that defendant told her he was involved in the shooting of Forman, Lindler, and Underwood.

¶ 10       Lacey Mayne, defendant's girlfriend, testified that on March 15, 2006, she drove defendant to a family party at his sister's residence at approximately 7:30 p.m. Mayne left at approximately 10 p.m. and returned to pick defendant up at 1 a.m. on March 16. Defendant was at the party the entire time Mayne was present.

¶ 11       Ayissha Fitzpatrick and Eulonda Fitzpatrick, defendant's sisters, testified that they also attended the party and stated that defendant was present from approximately 7:30 p.m. until 1 a.m. the following morning.

¶ 12       A jury found defendant guilty of all charges, and the court sentenced defendant to 60 years' imprisonment. On direct appeal, we affirmed defendant's convictions. *People v. Fitzpatrick*, 2018 IL App (3d) 150752-U.

¶ 13       Defendant filed a postconviction petition as a self-represented litigant alleging, *inter alia*, a claim of actual innocence. In the petition, defendant claimed that affidavits from Spencer,

3

Marizetts, and Lawson, constituted newly discovered evidence exonerating defendant of his convictions.[1] Defendant argued (1) the evidence contained in the affidavits could not have been discovered prior to trial because he was not at the scene when the crime occurred and could not have known what other witnesses were present until they voluntarily came forward; (2) the evidence is material and noncumulative where it alleges that Lee framed defendant because Lee did not trust defendant, which was not elicited at trial; and (3) the affidavits indicate that defendant was not at the crime scene, and therefore, exonerate defendant. Defendant attached affidavits from Spencer, Marizetts, and Lawson.

¶ 14        Spencer's affidavit averred that he was involved in the March 15, 2006, shooting. Before the shooting, Spencer had developed a retaliation plan with Lee, King, Sims, and Marizetts against the rival No Love gang. Spencer procured the guns for the shooting. Lee told Sims and King not to leave any witnesses. After the shooting, at approximately 9:30 p.m., Spencer picked Sims up. Sims stated that Johnson and King were the shooters. King made a mistake and shot at the individuals in the truck while Forman got away. After police questioned defendant about the shooting, "people" began believing defendant was untrustworthy. Lee told gang members to blame defendant for the shooting if "things go wrong." Spencer indicated that he knew defendant was with his family the night of the shooting and defendant did not participate in the planning or execution of the shooting.

¶ 15        Marizetts averred that King wanted to kill Forman because he believed Forman had killed his friend. On the evening of March 15, 2006, Marizetts observed King driving with Sims and Johnson. King told Marizetts that he spotted Forman, and Marizetts needed to leave the location. Marizetts only saw King pull up to the scene and was not present for the shooting. Following

_____

[1]DeMorco Spencer, Marizetts, and Robert Lawson did not testify at trial.

Marizetts's imprisonment several years later, Marizetts received a letter from Lee. Lee indicated that Marizetts should implicate defendant in the March 15, 2006, shooting because defendant was not adequately participating in the gang.

¶ 16    Lawson's affidavit averred that he met with King, Johnson, and Sims on the night of the shooting. After the shooting, Johnson told Lawson that he, King, and Sims were involved in the shooting. King made a mistake by shooting someone else instead of Forman. Sims and King shot two women and were mad that Forman got away. Approximately four months after the shooting, King relayed to Lawson that Lee told them to blame the shooting on defendant because he could not be trusted.

¶ 17    The court summarily dismissed defendant's petition at the first stage, finding the evidence presented did not meet the requirements of newly discovered evidence under a claim of actual innocence.

¶ 18    II. ANALYSIS

¶ 19    On appeal, defendant argues that the circuit court erred by summarily dismissing his petition at the first stage because his petition set forth an arguable claim of actual innocence. Specifically, the affidavits submitted by Spencer, Marizetts, and Lawson are newly discovered, noncumulative, and of such a conclusive character that it would change the result at trial.

¶ 20    The Post-Conviction Hearing Act permits a criminal defendant to challenge the proceedings which resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The first stage of postconviction proceedings "presents a 'low threshold' [citation], requiring only that the petitioner plead sufficient facts to assert an

5

arguably constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010) (quoting *People v. Jones*, 211 Ill. 2d 140, 144 (2004)). At the first stage,

> "[w]ell-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity. In assessing whether a petitioner has satisfied the low threshold applicable to a colorable claim of actual innocence, the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal at retrial." *People v. Robinson*, 2020 IL 123849, ¶ 60.

"Resolution of that issue requires that we ascertain whether the supporting affidavits raise the probability that it is more likely than not that no reasonable juror would have convicted petitioner." *Id.* ¶ 61. The circuit court may summarily dismiss the petition at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* When deciding the legal sufficiency of a postconviction petition at the pleading stage, the court is precluded from making factual and credibility determinations. *Robinson*, 2020 IL 123849, ¶ 45. Further, merely conflicting evidence is insufficient reason to deny a petition at the pleading stage. *Id.* ¶ 57.

¶ 21        To warrant a second-stage proceeding for a claim of actual innocence, a petition must make an arguable showing that the evidence is (1) newly discovered, (2) material and noncumulative, and (3) conclusive enough to change the outcome at trial. *People v. Mabrey*, 2016 IL (1st) 141359, ¶ 23; *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). "Newly discovered

evidence is evidence that was discovered after trial that the [defendant] could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. "Evidence is material if it is relevant and probative of the [defendant's] innocence." *Id.* "Noncumulative evidence adds to the information that the fact finder heard at trial." *Id.* "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48. We review *de novo* the circuit court's first-stage summary dismissal of a postconviction petition. *Hodges*, 234 Ill. 2d at 9.

¶ 22        First, Spencer, Marizetts, and Lawson's allegations that defendant did not commit the shooting and that Lee had told other individuals to blame defendant for the shooting are arguably newly discovered. The information in Spencer's affidavit was arguably not discoverable until Spencer provided it because he implicated himself in the shooting and could have invoked his fifth amendment right against self-incrimination if called to testify. See *People v. Parker*, 2012 IL App (1st) 101809, ¶ 83 (because the codefendant's affidavit included statements of self-incrimination, the evidence could not have been discovered sooner through due diligence). Marizetts's affidavit also provides evidence of Lee's efforts to persuade other gang members to blame defendant for a shooting that he purportedly did not commit. While Marizetts was known to defendant at the time of trial, his affidavit is arguably newly discovered as Marizetts's affidavit contradicted the evidence at trial that implicated defendant in the crime. Further, as with Spencer, there is no indication that defendant knew at the time of trial that Lee made an effort to blame defendant for the shooting. Even if defendant was aware of the allegations, he would not

7

have been able to compel Marizetts to testify because Marizetts could invoke his fifth amendment right against self-incrimination. See *id.* Like Spencer and Marizetts, Lawson's allegations are arguably newly discovered and indicate defendant was actually innocent of the crime. Lawson was not mentioned during the trial and did not come forward until after the trial was over. Lawson also indicated that Lee instructed him and various other individuals to blame defendant for the shooting.

¶ 23        Second, the affidavits are arguably material and noncumulative, as they are probative of defendant's innocence and add to the information that the jury heard at trial. The affidavits present evidence that King, Sims, and Johnson were solely responsible for the execution of the shooting. The affidavits also indicate that Lee made a concerted effort to blame defendant for the shooting despite the fact that he was allegedly not present at the scene.

¶ 24        Finally, taking the allegations from the three affidavits that defendant was not present at the scene of the shooting and was wrongly blamed for the shooting as true, defendant's actual innocence claim is arguably of such a conclusive character that it could change the result on retrial. Therefore, defendant presented an arguable claim of actual innocence warranting second-stage postconviction proceedings.

¶ 25                                    III. CONCLUSION

¶ 26        The judgment of the circuit court of Peoria County is reversed and remanded for second-stage postconviction proceedings.

¶ 27        Reversed and remanded.