**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200502-U

Order filed June 6, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0502 Circuit No. 07-CF-251 |
| | ) | |
| DANIEL R. BELKNAP, | ) ) | Honorable Raymond A. Cavanaugh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Presiding Justice O'Brien and Justice Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1　　*Held*:　The circuit court did not err in denying defendant's postconviction petition following an evidentiary hearing where defendant failed to make a substantial showing of actual innocence or that he received ineffective assistance of counsel.

¶ 2　　Defendant, Daniel R. Belknap, appeals the McDonough County circuit court's denial of his postconviction petition following a third-stage evidentiary hearing. Specifically, defendant argues that he made a substantial showing of actual innocence and that trial and appellate counsel were ineffective. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4        A jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)).

On appeal, we reversed defendant's conviction and remanded for a new trial due to the circuit

court's failure to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during jury

selection. *People v. Belknap*, 396 Ill. App. 3d 183, 213 (2009). Defendant proceeded to a second

jury trial and was again found guilty. The circuit court sentenced defendant to 24 years'

imprisonment. Defendant appealed his conviction based on the sufficiency of the evidence, the

court's failure to comply with Rule 431(b), and improper remarks made during the State's

opening and closing arguments. We reversed and remanded for a new trial. *People v. Belknap*,

2013 IL App (3d) 110833, ¶ 95. The State appealed and our supreme court reversed our decision,

reinstating defendant's conviction and sentence. *People v. Belknap*, 2014 IL 117094, ¶ 70.

¶ 5        The evidence presented at defendant's second trial established that on September 10,

2006, five-year-old Silven Yocum was transported to the hospital after her mother, Erin Yocum,

called 911 reporting that Silven was having seizures. Silven was airlifted to St. Francis Hospital

in Peoria, where she was treated for swelling in her brain and underwent surgery to remove a

blood clot from her brain. Silven died from her injuries on September 16, 2006. Forensic

pathologists testified that the cause of death was a brain bleed due to multiple nonaccidental

blows to the head.

¶ 6        Dr. Khaled Dabash, the pediatrician in the emergency room when Silven was admitted,

testified at defendant's first trial. His testimony was read for the jury during the second trial.

Dabash testified that Silven died as a result of child abuse. When Silven first arrived at the

hospital, she was unconscious and still seizing. She had no fever or sign of infection. Dabash

observed bruising and other marks on Silven, which he believed was indicative of abuse. A

2

computed tomography scan showed blood covering the entire right side of Silven's brain. In Dabash's opinion, the brain bleed was caused by blunt force trauma within 24 hours before Silven was brought to the hospital. The transcripts of Dabash's testimony reflected that defendant's attorney did not cross-examine Dabash regarding his 2008 felony conviction for vendor fraud.

¶ 7    At the time of Silven's death, Erin had been in a relationship with defendant and had recently moved into defendant's home. Erin testified that the day before Silven was taken to the hospital, Silven was acting sluggish and clingy. Erin believed Silven was getting sick. Defendant was left alone with Silven several times throughout the day. On the morning of September 10, 2006, Erin noticed that Silven was snoring loudly. Thinking Silven was sick, Erin let her continue to sleep and did not enter Silven's room to wake her until approximately noon. Erin then discovered that Silven was seizing and could not be woken up. Erin called 911.

¶ 8    At defendant's trial, Matthew Hocker and his wife, Jami Dysert-Hocker, testified that on the night of September 10, 2006, defendant visited their home crying. Matthew testified that defendant was worried about the police contacting him about the incident.

¶ 9    The State also called two jailhouse informants to testify against defendant. Joseph Burgess shared a cell with defendant at the Tazewell County jail between April and July 2007. Defendant told Burgess that Silven witnessed defendant smoking methamphetamine. Silven told defendant she would tell the D.A.R.E. officer at school about it if he did not stop. Defendant told Burgess that he slapped her, and that he killed her.

¶ 10    Jeffrey Ahlers testified that defendant was housed in the same unit as him in the Tazewell County jail between August and October 2007 and became acquainted with each other during

3

Alcoholics Anonymous meetings. Defendant told Ahlers that the day Silven was injured, she angered defendant, and he lost control and hit her in the head.

¶ 11    Defendant did not testify at his second trial. However, a portion of defendant's testimony from his first trial was read to the jury. In this portion, defendant denied telling Burgess or Ahlers that he hit Silven. He further stated that defense counsel had instructed him not to speak to anyone about his case or any other pending matters, because of the possibility of jailhouse informants using the information to procure a more lenient sentence for themselves. Defendant maintained that he did not cause Silven's injuries. The jury found defendant guilty of first degree murder. The court sentenced him to 24 years' imprisonment.

¶ 12    After our supreme court affirmed his conviction, defendant filed a postconviction petition alleging eight instances of ineffective assistance of trial counsel and ineffective assistance of appellate counsel for the failure to raise the ineffective assistance of trial counsel claims on appeal. Defendant further alleged that newly discovered evidence ruined the credibility of Ahlers and Burgess which could have changed the outcome of the trial. Finally, defendant alleged he was denied a fair trial when Dabash was allowed to testify that Silven's death was a result of child abuse when Dabash was not qualified to testify as such. The postconviction petition included affidavits signed by Robert Youngblood and Frederick Lambert, stating they knew of inmates that conspired to set up defendant for Silven's murder, and in exchange for their false testimony, these inmates received credit on their own sentences.

¶ 13    The petition proceeded to a third-stage evidentiary hearing, which was held in November 2016. Defendant called Youngblood and Lambert to testify on his behalf regarding affidavits they submitted with defendant's petition.

4

¶ 14    Youngblood testified that he was incarcerated for murder and met defendant when they were cellmates at Pinckneyville Correctional Center. Youngblood's previous cellmate was Nathan Wallick. Wallick purportedly told Youngblood about another inmate, Ahlers, who he helped to create a plan, offering evidence against a man accused of the murder of a child in exchange for consideration of his own sentence. Wallick suggested Youngblood could do the same to reduce his sentence. A year later, Youngblood shared a cell with defendant and overheard defendant talking about his case. After asking defendant if he knew Wallick, Youngblood realized that Wallick was referring to defendant when he told Youngblood about the plan he helped execute.

¶ 15    Lambert testified that he acted as defendant's "jailhouse lawyer" while they were incarcerated at Pinckneyville Correctional Center. Lambert assisted defendant in preparing a postconviction petition, brief, and section 2-1401 petition. In preparing the petitions, he read the transcripts from defendant's trial and spoke to both defendant and Youngblood about defendant's case, specifically regarding the "jailhouse snitches," Ahlers and Wallick. Youngblood told Lambert that Wallick helped Ahlers testify falsely to receive a reduction in his sentence. However, Lambert never spoke to Wallick and could only provide testimony regarding what Youngblood told him about his conversation with Wallick.

¶ 16    Wallick did not testify at either of defendant's trials. He also did not testify at the evidentiary hearing for defendant's postconviction petition. While two "jailhouse snitches" testified against defendant stating that he confessed to hitting and killing Silven, Wallick did not, and the State did not mention him at trial.

¶ 17    The court denied defendant's postconviction petition on August 25, 2017. Before the court entered its written order, defense counsel filed a notice of appeal on August 22, 2017. We

5

dismissed the appeal for lack of jurisdiction, because the notice of appeal was filed before the court issued its final order. *People v. Belknap*, 2019 IL App (3d) 170550-U. Defense counsel filed a motion for leave to file a successive postconviction petition, arguing she provided unreasonable assistance in improperly filing the notice of appeal. The circuit court granted the motion and ultimately granted relief based on the successive petition in order to allow defendant to appeal on the issues raised in the original postconviction petition. Defendant subsequently appealed his postconviction petition.

¶ 18                                                    II. ANALYSIS

¶ 19        Defendant argues that the circuit court erred in denying his postconviction petition because he made a substantial showing of actual innocence and ineffective assistance of trial and appellate counsel.

¶ 20        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a three-stage process for evaluating postconviction petitions requesting relief for constitutional violations. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the third stage of postconviction proceedings, it is the defendant's burden to make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). We will not reverse the circuit court's decision following a third-stage evidentiary hearing where fact finding and credibility determinations are involved unless the decision is manifestly erroneous. *Id.* A finding of manifest error will only be made when the error is " 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 21                           A. Ineffective Assistance

¶ 22        Defendant argues that trial counsel was ineffective for: (1) failing to impeach Dabash by introducing his prior felony conviction for vendor fraud; (2) failing to object to Dabash's testimony that Silven died as a result of child abuse; (3) failing to impeach Burgess with inconsistent statements; (4) eliciting testimony from Burgess that allowed him to repeat his allegations that defendant confessed to the murder; (5) eliciting testimony from Burgess that he and defendant were close friends; (6) failing to elicit testimony from Erin regarding defendant's behavior and sleeping habits while under the influence of drugs; (7) failing to elicit testimony from Erin regarding Silven hitting her head at school a few days prior to being admitted to the hospital; (8) failing to elicit testimony from Jami regarding Erin's own drug use; (9) failing to properly cross-examine Matthew when he testified that defendant wondered whether the police would come for him to explain why defendant felt that way; (10) failing to object to Ahlers's prior consistent statement being presented to the jury; (11) failing to object to Ahlers's "expert" testimony regarding the effects of "tweaking" on methamphetamine; and (12) failing to object to the State's opening and closing arguments when it purposely made statements solely to seek sympathy from the jury. Defendant argues that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal.

¶ 23        When reviewing a claim of ineffective assistance of counsel at the third stage of a postconviction petition, we defer to the court's findings of fact unless they are against the manifest weight of the evidence, but we review the ultimate decision of whether counsel was ineffective *de novo*. *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 55.

¶ 24        We analyze claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, a defendant

7

must show that counsel rendered deficient performance and that the deficient performance prejudiced the defendant. *Id.* Prejudice is demonstrated where a defendant shows that a reasonable probability exists that, but for the deficient performance, the result of the trial would have been different. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 669. Claims of ineffectiveness of counsel may be rejected on prejudice grounds alone, "for lack of prejudice renders irrelevant the issue of counsel's performance." *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998). "[I]f [an] ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997).

¶ 25        Upon review, we find that defendant did not make a substantial showing that he was prejudiced by counsel's allegedly deficient performance. The State was required to prove that defendant intended to kill Silven without lawful justification. 720 ILCS 5/9-1(a)(1) (West 2006). The evidence that Silven died as a result of a brain injury is clear. Moreover, Erin's testimony established that defendant was supervising Silven earlier in the day before Silven suffered the seizure. Testimony from the Hockers established defendant's consciousness of guilt, as he expressed concern about the police contacting him following Silven's death. See, *e.g.*, *People v. Gacho*, 122 Ill. 2d 221, 246 (1988) (letter showing that defendant wanted to escape from jail was properly admitted to show consciousness of guilt). Together, this evidence circumstantially established that defendant was responsible for Silven's death. Furthermore, the testimony of Burgess and Ahlers directly established defendant's responsibility for Silven's death and intent to kill her. Impeaching or challenging Dabash's testimony would have no effect on this other evidence that directly proved defendant's guilt.

¶ 26 Finally, we note that our supreme court has already determined that when "[v]iewing the evidence in a commonsense manner in the context of the totality of the circumstances, *** the evidence in this case was not closely balanced." *Belknap*, 2014 IL 117094, ¶ 62. A finding that evidence is not closely balanced assists in the review of ineffective assistance claims based on evidentiary error, as "[b]oth analyses are evidence-dependent and result-oriented." *People v. White*, 2011 IL 109689, ¶ 134. Under either analysis, prejudice must be shown. *Id.* ¶ 133. Where a defendant fails to show prejudice, defendant can prove neither ineffective assistance of counsel nor plain error under the closely-balanced-evidence analysis. *Id.* ¶ 134. When determining that this case was not closely balanced, our supreme court explained that, even applying the necessary amount of caution when considering the credibility of Burgess's and Ahlers's testimony due to their status as inmates with extensive criminal histories, the evidence against defendant was overwhelming. *Belknap*, 2014 IL 117094, ¶¶ 56-57. Even if there were errors at trial, defendant was not prejudiced by them due to the substantial evidence in the State's favor. See *id.* ¶ 70. Defendant could not prove he was prejudiced due to potential errors under the closely balanced evidence prong of the plain error analysis, and therefore cannot prove now that he was prejudiced through an ineffective assistance of counsel claim.

¶ 27 Turning to defendant's claim of ineffective assistance of appellate counsel, we note that if defendant's claims of ineffective assistance of trial counsel fail, appellate counsel cannot be found ineffective for failing to raise these meritless claims on appeal. *People v. Coleman*, 168 Ill. 2d 509, 523 (1995). As defendant's claims against trial counsel are meritless, appellate counsel was not ineffective.

¶ 28                                    B. Actual Innocence

¶ 29        Defendant argues he made a substantial showing of actual innocence because the newly

discovered evidence from Youngblood and Lambert established that he did not murder Silven.

¶ 30        To assert a claim of actual innocence based on newly discovered evidence, a defendant

must show that the evidence was (1) newly discovered, (2) material and not merely cumulative,

and (3) of such a conclusive character that it would probably change the result on retrial. *People*

*v. Ortiz*, 235 Ill. 2d 319, 333 (2009); *People v. Orange*, 195 Ill. 2d 437, 450-51 (2001). The new

evidence need not prove actual innocence, but it must be sufficient to justify a closer scrutiny of

all the facts and circumstances presented at trial to determine guilt or innocence. *Ortiz*, 235 Ill.

2d at 337. In the context of a third-stage postconviction hearing, the question is not whether the

State's evidence is sufficient to convict beyond a reasonable doubt, but whether it is probable

that a jury "considering all the evidence, both new and old together," would still convict. *People*

*v. Coleman*, 2013 IL 113307, ¶ 97.

¶ 31        Newly discovered evidence is "evidence that was unavailable at trial and could not have

been discovered sooner through due diligence." *People v. Harris*, 206 Ill. 2d 293, 301 (2002).

"Material means the evidence is relevant and probative of the petitioner's innocence." *Coleman*,

2013 IL 113307, ¶ 96. "Noncumulative means the evidence adds to what the jury heard." *Id.* The

final requirement is that the newly discovered evidence was of such a conclusive character that it

would probably change the result on retrial. See *Ortiz*, 235 Ill. 2d at 333. Conclusive means that

the "evidence, when considered along with the trial evidence, would probably lead to a different

result." *Id.* "Probability, rather than certainty, is the key in considering whether the fact finder

would reach a different result after considering the prior evidence along with the new evidence."

*People v. Robinson*, 2020 IL 123849, ¶ 48. Further, when newly discovered evidence

"contradicts the State's evidence at trial, it is capable of producing a different outcome at trial." *People v. Harper*, 2013 IL App (1st) 102181, ¶ 49.

¶ 32       The evidence presented here is not of such conclusive character that it would " ' "probably change the result on retrial," ' " which is the most important element of an actual innocence claim. *People v. Washington*, 171 Ill. 2d 475, 489 (1996) (quoting *People v. Silagy*, 116 Ill. 2d 357, 368 (1987), quoting *People v. Molstad*, 101 Ill. 2d 128, 134 (1984)). Defendant presents the affidavit and testimony of non-eyewitnesses, who aver to conversations they had with each other and another inmate who did not testify at trial. This evidence is not "compelling evidence" (*id.*) that would present a " 'truly persuasive demonstration of innocence.' " *Id.* at 488 (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

¶ 33       Defendant contends that Youngblood's and Lambert's testimony show that Wallick conspired with Ahlers and Burgess to submit false testimony that defendant confessed to killing Silven. At most, such evidence could merely impeach or contradict the record, which indicates that defendant told Ahlers and Burgess that he killed Silven. Evidence that serves to impeach or discredit the State's evidence, but does not affirmatively establish a defendant's innocence, does not serve as the basis for the granting of a new trial. *People v. Smith*, 177 Ill. 2d 53, 82-83 (1997).

¶ 34       Additionally, newly discovered evidence which merely impeaches a witness will not typically be of such conclusive character as to justify postconviction relief. *People v. Harris*, 154 Ill. App. 3d 308, 319 (1987). When evidence merely impeaches or contradicts trial testimony, it is typically not of such conclusive character as to justify postconviction relief. *People v. Collier*, 387 Ill. App. 3d 630, 636-37 (2008). This is especially true in the instant case as this evidence only directly attacks Ahlers's testimony. It does not specifically address Burgess's testimony that

11

defendant admitted to him that he hit and killed Silven. Therefore, it was not so conclusive as to undermine Burgess's testimony and lead to a different result.

¶ 35     Accordingly, the court did not manifestly err when it concluded that the newly discovered evidence was not so conclusive that it undermined the original outcome from trial and denied defendant postconviction relief.

¶ 36                                III. CONCLUSION

¶ 37     The judgment of the circuit court of McDonough County is affirmed.

¶ 38     Affirmed.

12