2022 IL App (2d) 210387-U
No. 2-21-0387
Order entered August 4, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1487 |
| TEOLIA M. JORDAN, III, | ) ) | Honorable Donald M. Tegeler, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's judgment denying defendant's postconviction petition after a third-stage evidentiary hearing on his claim of actual innocence where the court's finding that the new witness's testimony was not reliable was not manifestly erroneous and the new evidence would not have changed the result on retrial due to the three eyewitnesses who identified defendant as the shooter. Trial court is affirmed.

¶ 2    Following a jury trial, defendant, Teolia M. Jordan, III, and two of his brothers, Derrick D. Jordan, and Steven T. Jordan, were each convicted of seven counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2004)); (720 ILCS 5/9-1(a)(1) (West 2004)) arising out of a June 22,

2004, shooting incident, wherein several men shot at Kalvin Stewart, Gregory Warfield, and others in front of 1134 Kane Street in Aurora, in broad daylight. No physical evidence connected defendant to the crimes, but Gregory Warfield identified defendant at trial. After the jury found defendant and his brothers guilty, the trial court sentenced defendant to seven concurrent terms of 15½ years in the Department of Corrections. Defendant and his brothers appealed to this court. We affirmed their convictions in a consolidated disposition. See *People v. Jordan*, Nos. 2-06-1147, 2-06-1148, & 2-06-1149 cons. (2009) (unpublished order under Supreme Court Rule 23).

¶ 3    In 2012 defendant filed a postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) asserting his actual innocence. Defendant attached two affidavits, that of Gregory Warfield, who now recanted his trial testimony that defendant was one of the shooters, and that of Kalvin Stewart, who did not testify at trial but now averred that defendant was not one of the persons who shot at him.

¶ 4    The trial court granted the State's motion to dismiss defendant's petition and defendant appealed. We vacated the trial court's judgment and remanded the case for a third-stage evidentiary hearing. *People v. Jordan*, 2016 IL App (2d) 130463-U, ¶ 49. On remand, the trial court held a third-stage evidentiary hearing at which it heard testimony from Warfield and Stewart. The trial court denied defendant's petition, finding that Warfield and Stewart were not credible and that the newly "discovered evidence [was not] of such a conclusive nature that the outcome of a new trial would change the results of the first trial." Defendant now appeals, contending the trial court's judgment was manifestly erroneous. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                            A. Relevant Trial Testimony

¶ 7    At defendant's jury trial in May 2005, Gregory Warfield testified as follows. On June 22, 2004, at approximately 3:15 p.m., Gregory, several family members, and Ronnie Green were

outside of his house at 1138 Kane Street when he saw defendant and his brothers, Steven and Derrick, get out of a beige truck and walk up the street toward him and his friends, Ronnie Green, Casey Stewart, Kalvin "BoPeep" Stewart, and "Papoo," whose real name Gregory could not remember. Defendant, Steven, and Derrick were dressed in black. They rushed past Gregory's house, and chased after Kalvin Stewart and Papoo, shooting at them. A fourth person, who Gregory did not recognize, fired five shots at Gregory from approximately 20 feet away. Approximately 15 minutes after the shooting, the police arrived at the scene. Gregory told a police officer that he knew the three shooters, "[defendant], Stevie and Derrick." Six days after the shooting, during a photo lineup, Gregory identified defendant, Steven, and Derrick as the shooters. Gregory knew the Jordan brothers "[s]ince they were kids." Six days after the shooting, on June 28, Gregory identified defendant, Steven, and Derrick, by name, in a photo lineup as the shooters. A few days after the shooting, defendant told Gregory that he was not one of the shooters. Gregory testified that he "just told [defendant] that I seen him there, he was there."

¶ 8     Ronnie Green testified as follows. He was at Gregory's house on Kane Street just before the shooting, when he saw four men dressed in black, carrying guns, running on the sidewalk. They were not wearing hoodies. In open court Green identified three of the men as defendant and Steven and Derrick Jordan. Steven and Derrick shot at Kalvin Stewart and James Fultz. On the day of the shooting, Green told the police he did not "know nothin' about nothin'." Green wanted to protect his friends and "associates." Green also testified that, on the day of the shooting, he told police officer Podschweit that defendant, Steven, and Derrick were the shooters, and he denied that he was merely repeating what he heard Gregory tell the police. On June 29, 2004, during a photo lineup, Green told the police he did not recognize anyone because he did not want to get involved. Green admitted that he was a felon, convicted of unlawful possession of a controlled substance, delivery of a controlled substance, and delivery of a look-a-like substance.

¶ 9    Patsy Harris, a hearing-impaired individual, testified through a sign-language interpreter that on the day of the shooting she was at her cousin Vivian's house on Kane Street. Harris saw four people wearing hoods pull up and walk by. They started shooting. Harris could not identify defendant, Steven, or Derrick as the shooters, and she did not see them at the scene of the shooting. Nine months after the shooting, the police showed Harris a photo lineup, but there was no sign-language interpreter present. Harris identified only defendant as one of the shooters, because the police asked her only about his photo. Harris asked the state's attorney's office to relocate her because she was afraid.

¶ 10    Aurora police officer Douglas Podschweit testified that at approximately 3:15 p.m. on the day of the shooting, he went to Kane Street following a dispatch call of shots fired. Gregory Warfield told Podschweit that the shooters were "the Jordans," specifically, defendant, Steven, and Derrick.

¶ 11    Aurora police detective Wayne Biles testified that during a photo lineup conducted six days after the shooting, on June 28, 2004, Gregory Warfield identified defendant, Steven, and Derrick as the shooters. On June 29, 2004, Green met with Biles when he checked in for parole. Green did not identify anyone during a photo lineup. Green told Biles that when he named defendant, Steven, and Derrick as the shooters at the scene, he was only repeating what he heard Gregory tell the police. Green told Biles that he could not say it was "the Jordans." On September 20, 2004, Green identified defendant, Steven, and Derrick as the shooters in another photo lineup, and Kendrick Elliott as the person who shot him.

¶ 12    Aurora police detective Martin Sigsworth testified that the day after the shooting he met with Vivian Warfield, a hearing-impaired individual, at a driveway on Kane Street. Sigsworth knew Vivian was deaf but he did not bring a sign-language interpreter. However, Vivian indicated

that she could read lips. Vivian identified defendant, Steven, and Derrick as the shooters in a photo lineup.

¶ 13    Vivian Warfield testified through a sign-language interpreter that on the day of the shooting she was outside her home on Kane Street with her family. She noticed four men walk by dressed in dark clothes. She felt and heard shots fired so she crouched down underneath her car. Vivian found out right after the shooting that it was the Jordan brothers. Vivian testified that she could not identify defendant, Steven, or Derrick, as the shooters. She did not see them at the scene of the shooting. Vivian explained that she identified defendant, Steven, and Derrick as the shooters to the police at the scene of the shooting because her great-niece, Destiny, told her they were the shooters. When the police spoke to her the following day, they did not bring a sign-language interpreter, but Destiny interpreted for Vivian. During cross-examination Vivian testified that the only reason she identified defendant, Steven, and Derrick out of a photo lineup the following day was because she knew they were brothers, and she knew them. On redirect Vivian testified that she was afraid.

¶ 14    Defendant testified as follows. On the day of the shooting, he was home barbequing for his son's birthday party "all day." He did not go to Kane Street on the day of the shooting. Defendant began grilling at about 11:30 a.m. or noon. He spoke to his ex-girlfriend, Mi-Amber Whitehead, on the telephone at about 3 p.m. Defendant lived with Latrina Fitzpatrick.

¶ 15    Defense witness, Whitehead, testified that she was not at the birthday party, but she spoke with defendant on his cellphone at around 3 p.m. on the day of the shooting.

¶ 16    Defense witness, Latrina Fitzpatrick testified as follows. She and her ten-year old daughter lived with defendant in an apartment. On the day of the shooting, Fitzpatrick saw defendant at the apartment complex "all day [and] all night." Defendant was grilling in the courtyard. Fitzpatrick was at the party until around 5 or 6 p.m. when she went to the mall.

¶ 17    Bobby Tenner, who lived in a different apartment near defendant, testified as follows. During the afternoon hours on the day of the shooting, Tenner had a "constant view" of defendant from 8 a.m. to 6 p.m. Defendant was "cooking all the time [Tenner had] seen him." Tenner saw defendant through his window. For the approximately ten hours that Tenner watched out his window, he also watched television.

¶ 18    Mary McKinney, who also lived in a different apartment near defendant, testified as follows. McKinney was home on the day of the shooting, and she first saw defendant "between three and four" in the afternoon. Defendant was barbequing.

¶ 19    After hearing all the evidence, the jury convicted defendant of seven counts of attempted first-degree murder, and he was sentenced to 15½ years in prison. As mentioned above, this court affirmed defendant's conviction on direct appeal.

¶ 20                              B. Postconviction Proceedings

¶ 21    In February 2012 defendant filed a postconviction petition asserting a claim of actual innocence. Defendant supported his claim with affidavits from Gregory Warfield and Kalvin Stewart. In Gregory's affidavit, he recanted his previous statements and testimony implicating defendant in the shooting. Gregory averred that defendant "was not present at the scene at the time of the shooting," and he had "assumed [defendant] was at the scene because [he] knew [defendant's] brothers were the shooters, and [he] associated them with [defendant]."

¶ 22    In Stewart's affidavit, he averred that at he was present at the shooting; four men, "about a quarter of a block away[,] *** fired shots at [him] and James Fultz, [and he saw] their faces clearly." Stewart also averred that he had known defendant for "approximately 18 years" and he was "certain [defendant] was not one of the four individuals *** firing shots."

¶ 23    The State filed a motion to dismiss defendant's petition, which the trial court granted. After we vacated the trial court's judgment and remanded the case (*Jordan*, 2016 IL App (2d) 130463-

U, ¶ 49), the trial court held a third-stage evidentiary hearing. At that hearing Gregory testified as follows. He saw the shooting. He had known defendant for all of defendant's life. Defendant "was not there at the time of the shooting because it was mistaken identity." Gregory did not see defendant at the shooting. He saw two of defendant's brothers. When asked "which brothers," Gregory replied, "I don't know them all by name." He agreed that he spoke with a police officer on the day of the shooting, picked defendant out of a photo lineup as one of the shooters, and identified defendant as one of the shooters at defendant's trial. When asked what Gregory meant by "mistaken identity," he stated, "I made a mistake in identifying the young man." Gregory testified that he was currently incarcerated in a federal prison due to conviction for conspiracy to distribute a controlled substance. One of Gregory's codefendants was Kalvin Stewart.

¶ 24   After argument, the trial court took the case under advisement. On June 14, 2021, the court issued a written order. It found that Gregory Warfield and Kalvin Stewart were not credible and recounted the evidence against defendant provided at trial. Thereafter, the court denied defendant's actual innocence claim and dismissed his postconviction petition. On July 13, 2021, defendant filed a timely notice of appeal.

¶ 25                              II. ANALYSIS

¶ 26   The Post-Conviction Hearing Act provides a three-stage procedure by which a criminal defendant can assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1 et seq. (West 2018). At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed within that 90-day period, the circuit court must docket it for further consideration. 725 ILCS 5/122-2.1(b) (West 2018). At the second stage of postconviction proceedings, counsel may be appointed for

defendant, if defendant is indigent. 725 ILCS 5/122-4 (West 2018). After counsel has made any necessary amendments to the petition, the State may move to dismiss a petition or an amended petition pending before the court. 725 ILCS 5/122-5 (West 2018). If that motion is denied, or if no motion to dismiss is filed, the State must answer the petition, and, barring the allowance of further pleadings by the court, the proceeding then advances to the third stage, a hearing wherein the defendant may present evidence in support of the petition. 725 ILCS 5/122-6 (West 2018).

¶ 27 At a third stage hearing, the defendant must show by a preponderance of the evidence a substantial constitutional violation. *People v. Coleman*, 2013 IL 113307, ¶ 92. We will not reverse the court's denial of a postconviction petition following an evidentiary hearing unless the denial was manifestly erroneous. See *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). A decision is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009).

¶ 28 The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered evidence. *Id.* at 333. Evidence in support of a claim of actual innocence must be: (1) newly discovered; (2) not discoverable earlier through the exercise of due diligence; (3) material and not merely cumulative; and (4) of such conclusive character that, when considered along with the evidence that was presented at trial, the new evidence would probably change the result on retrial. *People v. Sanders*, 2016 IL 118123, ¶ 24.

¶ 29 The State concedes that the evidence was newly discovered, not discoverable earlier through due diligence, and not merely cumulative. This leaves us with determining whether the trial court erred by finding that the new evidence was not material and whether the new evidence was not of such conclusive character that, when considered with the trial evidence, would probably change the result on retrial.

¶ 30   Defendant argues that Gregory Warfield and Kalvin Stewart's testimony that defendant was not the shooter was conclusive evidence that would likely change the result on retrial. The State counters that Gregory and Kalvin's testimony was not conclusive evidence that would probably change the result on retrial because the trial court properly found that their testimony was not credible.

¶ 31   The purpose of the third-stage evidentiary hearing in this case was to determine whether the new evidence was of such conclusive character that it would probably change the result on retrial. To make this determination, the trial court was required to assess the credibility of Gregory Warfield and Kalvin Stewart. Our supreme court has described the role of the trial court as follows: "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34; see also *People v. Gonzalez*, 407 Ill. App. 3d 1026, 1036 (2011) ("Credibility determinations such as this [at a third-stage evidentiary hearing] are properly made by the trier of fact, and we have no basis in the record for second-guessing the trial court's judgment."). "This is a comprehensive approach and involves credibility determinations that are uniquely appropriate for trial judges to make." *Coleman*, 2013 IL 113307, ¶ 97.

¶ 32   The trial court did not commit manifest error by its finding that Gregory and Kalvin's testimony at the evidentiary hearing was not credible. The trial court was in the "uniquely appropriate" position to make credibility determinations. *Coleman*, 2013 IL 113307, ¶ 97. Gregory's and Kalvin's testimony that defendant was not one of the shooters was contradicted by Gregory's and Ronnie Green's trial testimony. Gregory identified defendant as one of the shooters to police immediately after the shooting. Gregory also identified defendant in a photo lineup six days after the shooting and in open court at trial. Ronnie Green identified defendant in a photo

lineup and in open court at trial. Further, Vivian Warfield identified defendant as one of the shooters in a photo lineup. Although Vivian recanted her identification of defendant at trial, she explained that she was afraid, and we note that recantations are inherently unreliable. See *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 33    We also note that neither Gregory nor Kalvin explained why they waited nearly eight years to come forward with their allegedly exculpatory information. According to Gregory's testimony at the evidentiary hearing, he had known defendant for defendant's entire life, and yet, he recanted his trial testimony due to "mistaken identity." Further, at the evidentiary hearing Gregory testified that he did not know the Jordan brothers by name. Yet, he identified defendant, Steven, and Derrick by name in a photo lineup, and identified them, by name, at their trial. Kalvin gave no reasonable explanation for why he waited so long to come forward.

¶ 34    Credibility determinations regarding the veracity of Gregory's and Kalvin's testimony was for the trial court to make, and we have no basis in the record before us for second-guessing its judgment. See *Morgan*, 212 Ill. 2d at 162. Thus, Gregory and Kalvin's testimony was not of such a conclusive character that, when considered along with the trial evidence, would probably lead to a different result on retrial. Accordingly, the trial court's denial of defendant's amended postconviction petition was not manifestly erroneous.

¶ 35    Defendant notes that at trial, witnesses corroborated his testimony that he was barbequing at home at the time of the shooting and that the evidence against him was not overwhelming. However, the evidence presented at trial and the jury's guilty verdict is not in question here. "The question is whether the new evidence was sufficiently compelling that a decision by the trial court to reject that evidence in favor of the original testimony was manifestly erroneous. That is clearly not the case here." *Morgan*, 212 Ill. 2d at 161.

¶ 36   Defendant argues that we must not automatically disregard recanted testimony, but, instead, must consider certain factors to evaluate such testimony. Defendant cites *People v. Mercado*, 356 Ill. App. 487 (2005), to support his argument. In *Mercado* the defendant moved to withdraw his guilty plea after the victim, and sole witness, recanted her accusation and testimony. We held that the trial court abused its discretion by denying the defendant's motion after considering five factors. *Id.* at 497. Here, defendant did not move to withdraw a guilty plea, rather he filed a petition under the Act. Therefore, *Mercado* is distinguishable from this case.

¶ 37   Defendant cites *Ortiz*, 235 Ill. 2d 319, to support his argument. In *Ortiz*, our supreme court granted the defendant a new trial based on the testimony of a newly discovered additional eyewitness. The court held that the testimony was newly discovered where the witness did not admit to having witnessed the incident until more than 10 years after trial and made himself unavailable as a witness when he moved to a neighboring state shortly after the murder. *Id.* at 325. However, in *Ortiz*, the trial court did not assess the credibility of the testimony provided by the new witnesses. Here, the court found that Gregory and Kalvin were not credible. Thus, *Ortiz* is distinguishable from this case.

¶ 38   Finally, defendant argues, in the alternative, that if we determine that Kalvin Stewart's testimony was not newly discovered, it was incumbent on postconviction counsel to call defendant's counsel during the third-stage hearing to explain why counsel did not subpoena Kalvin as a trial witness. Defendant contends postconviction counsel's failure to do so was ineffective assistance. Because the State conceded that Kalvin's testimony was newly discovered we need not address this issue.

¶ 39                                     III. CONCLUSION

¶ 40   The judgment of the circuit court of Kane County is affirmed.

¶ 41   Affirmed.