NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230237-U

NO. 4-23-0237

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 4, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| ANDREW DONNELL COE, | ) | No. 14CF1141 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's denial of defendant's successive petition for postconviction relief at the third stage of postconviction proceedings was not manifestly erroneous.

¶ 2    Following a March 2023 third-stage evidentiary hearing, the trial court denied the successive petition for postconviction relief of defendant, Andrew Donnell Coe. Defendant, on appeal, argues the court erred when denying his petition because the newly discovered testimony demonstrates his actual innocence, warranting a new trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In October 2014, defendant was charged by indictment as follows: count I alleged on September 3, 2014, defendant criminally conspired with Darrell Harris to commit unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i), 405.1 (West 2014)); count II alleged on September 3, 2014, defendant committed unlawful delivery of a controlled substance (*id.*

§ 401(d)(i)); count III alleged on September 23, 2014, defendant committed unlawful possession of a controlled substance with the intent to deliver (*id.*); count IV alleged on September 23, 2014, defendant committed unlawful possession of a controlled substance (*id.* § 402(c)); and count V alleged on September 23, 2014, defendant committed obstruction of justice (720 ILCS 5/31-4(a)(1) (West 2014)).

¶ 5        Prior to trial, the State dismissed count I. Defendant waived appointed counsel and the matter proceeded to a jury trial in April 2016, where defendant represented himself. Because defendant, on appeal, is only challenging his conviction on count II, we provide only those facts relevant thereto.

¶ 6                                A. Jury Trial

¶ 7        Detective Kevin Raisbeck of the Bloomington Police Department testified Richard Velez came to the police station because Velez's roommate, defendant, was selling cocaine. Velez signed an agreement to be a confidential source. On September 3, 2014, Velez called defendant with the speaker function on to arrange the purchase of cocaine. The detective recognized the voice as sounding "very similar" to defendant's voice. He heard defendant say he had seven grams to sell.

¶ 8        Thereafter, Velez, with Raisbeck still present, began making phone calls to defendant's alleged source, Corey, to arrange a direct purchase from Corey. A controlled purchase was arranged. Velez was searched to confirm no narcotics or money were present. Velez was given $200 of marked currency. Raisbeck drove Velez near the agreed-upon meeting location. While waiting, Velez received a call from defendant. Defendant stated Corey had been "scared" by an unmarked police vehicle in the area but he would "take care" of Velez. A new meeting location was arranged near Locust and Catherine Streets in Bloomington. Raisbeck

stated defendant lived at 909½ West Mulberry Street, which was approximately a block and half from the new meeting location. Velez called defendant to tell him to hurry up and that he had $200. Velez left and returned less than 10 minutes later with several bags of purported cocaine and the $200. Raisbeck found it odd that Velez returned with the $200. Raisbeck secured the bags of cocaine into evidence. Defendant then called Velez and said he needed the $200 to pay Corey. Velez texted defendant to say he was on his way to give him the $200. Raisbeck drove Velez to the area of Locust and Catherine Streets and observed Velez walk toward 909½ West Mulberry Street. Velez returned approximately eight minutes later without the $200. A subsequent search of Velez and the unmarked police vehicle revealed no narcotics or money was present.

¶ 9       Velez had been wearing a concealed recording device that recorded two phone calls and an in-person meeting. When presented with the first phone call recording of Velez's conversation with defendant to facilitate the exchange of the $200, Raisbeck identified the voices on the recording as Velez's, his own, "a person that answered the phone initially," and defendant's. On the second phone call recording of Velez's conversation with defendant to check on defendant's arrival status for picking up the $200, Raisbeck identified the voices on the recording as his own, Velez's, and defendant's. On the in-person meeting recording of Velez's conversation with defendant to give him the $200, Raisbeck identified the voices on the recording as his own, Velez's, defendant's, and "some voices that were in the background of the residence."

¶ 10       The State sought to admit these recordings. Defendant objected to the foundation of the recordings. The trial court permitted defendant to conduct limited cross-examination of Raisbeck on the foundation. Regarding the in-person recording, defendant asked Raisbeck if the

voice he heard could have been someone other than defendant. Raisbeck stated, "It could have been. But like I said, it sounded very similar to what I know [defendant's] voice to sound like." Defendant asked if Velez spoke with anyone else besides defendant during the in-person recording. Raisbeck responded "[Velez] may have talked to Mr. Harris, who actually provided the drugs to Mr. Velez. But I think that conversation was brief." Defendant asked if he had heard Harris's voice on the recording. Raisbeck could not recall if he had heard Harris's voice "or if that was just the voices in the background."

¶ 11    The trial court admitted the recordings and the State resumed its direct examination of Raisbeck. Raisbeck was asked to identify the voice heard saying "did you rob someone, did you rob an—expletive[?]" Raisbeck said, "That's the voice that I believe is very similar to [defendant's] voice."

¶ 12    After several unsuccessful attempts, on September 8, 2014, Raisbeck contacted defendant. Defendant agreed to meet with Raisbeck on September 9, 2014, at the area of Locust and Catherine Streets. Raisbeck said he wanted to recruit defendant as a confidential source to investigate Corey. Defendant admitted he sold cocaine for Corey and explained their financial arrangement. Defendant provided Raisbeck with a description of Corey and Corey's phone number. Defendant was not arrested and was permitted to leave.

¶ 13    On cross-examination, Raisbeck stated Velez physically received the cocaine from Harris. Velez eventually paid defendant for the cocaine. Raisbeck did not see defendant with Harris on September 3, 2014. Defendant asked Raisbeck if his voice was the same as on the recording. Raisbeck said he could not be "a hundred percent sure," but he attributed any distinction to hearing it in person versus on a recording. He believed it was "similar." When asked to specify a percentage, Raisbeck said "[v]ery high" and "95 percent."

- 4 -

¶ 14    Neither Velez nor Harris testified at trial. After the conclusion of the evidence and closing arguments, the jury was instructed on legal accountability:

"A person is legally responsible for the conduct of another person when, either before or during the commission of the offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense."

¶ 15    Regarding count II, the instruction read:

"A person commits the offense of Unlawful Delivery of a Controlled Substance when he, or one for whose conduct he is legally responsible, knowingly delivers a substance containing a controlled substance.

To sustain the charge of Unlawful Delivery of a Controlled Substance, the State must prove the following proposition:

That the defendant, or one for whose conduct he was legally responsible, knowingly delivered a substance containing cocaine, a controlled substance."

¶ 16    The jury found defendant guilty on all counts. In July 2016, defendant was sentenced to concurrent terms of 18 years' imprisonment for counts II and III and 3 years' imprisonment for count V.

¶ 17            B. Direct Appeal and Initial Postconviction Petition

¶ 18    Defendant filed a direct appeal. This court affirmed defendant's convictions and sentences. *People v. Coe*, 2019 IL App (4th) 160713-U, ¶ 113. In January 2018, while his direct appeal was pending, defendant filed a postconviction petition, which the trial court summarily dismissed as frivolous and patently without merit. Defendant appealed, and this court affirmed.

*People v. Coe*, No. 4-18-0461 (Apr. 29, 2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19        In August 2019, while his appeal from his initial postconviction petition was pending, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). Defendant attached to his petition an affidavit from Antoine Parker, which read:

> "On September 3, 2014 late evening I was at apartment 909½ W. Mulberry, Bloomington, IL with a[n] associate of mine name Darrel nickname Rello. While at the apartment I witnessed Rello arrange a drug deal over his cell phone with some guy he addressed by Richard. Rello asked me to walk with him down the back alley of the apartment which I did but then I returned to the apartment without Rello. After Rello returned to the apartment, approximate two hours later while we were in the kitchen a tall slim guy about my height walked through the front door into the kitchen and handed Rello some money before I left to smoke a ciggarrette [*sic*] on the front porch. I voluntarily offered to sign a[n] affidavit regarding what I know and witnessed. [Defendant] was not at this apartment when this transpired."

¶ 20        Defendant claimed Parker's affidavit proved his innocence of count II. Defendant relied on the following: (1) Raisbeck admitted that Harris, not defendant, had delivered the cocaine to Velez on September 3, 2014, (2) the State alleged defendant was legally responsible for the drug transaction because defendant accepted the $200 as payment for the cocaine, (3) Raisbeck was not present and did not see Velez give the $200 to defendant at the residence located at 909½ West Mulberry Street, (4) Parker stated "a tall slim guy about [Parker's] height

walked through the front door into the kitchen and handed [Harris] some money," and (5) according to Parker, defendant was not present at 909½ West Mulberry Street when the transaction occurred.

¶ 21       The State moved to dismiss the petition, arguing (1) the petition was untimely, (2) the "tall slim guy" was unidentified and it was unclear why he handed Harris money, therefore, it could not be evidence of such a conclusive character that it would probably change the result on retrial, and (3) the evidence in Parker's affidavit could have been discovered prior to trial by the exercise of due diligence. The trial court granted the State's motion to dismiss defendant's section 2-1401 petition. The court found the petition was untimely. The court found Parker's affidavit did not support defendant's actual innocence, stating, "[T]here was still sufficient evidence for the trier of fact to find defendant guilty by way of accountability." Finally, the court found, if defendant had exercised due diligence, he could have discovered Parker before the trial. The court noted Harris and Velez were known to defendant prior to trial, and if Parker was with Harris and Velez as Parker stated, Parker's presence would have been disclosed by defendant interviewing and subpoenaing Harris and Velez. Defendant did not appeal the dismissal.

¶ 22                    C. Successive Postconviction Petition

¶ 23       In October 2020, defendant filed a successive petition for postconviction relief, the pleading at issue in this appeal, reasserting his actual innocence regarding count II. Defendant denied being in Harris's apartment on September 3, 2014, and denied making a drug deal with Velez. Defendant submitted his own affidavit averring that he had spoken with Harris by phone, wherein Harris made various admissions. He stated:

"Mr. Harris confessed to me that on September 3, 2014 [Velez] paid him $200 at apartment 909½ W. Mulberry for crack cocaine he gave to [Velez] on Locust Street. Harris admitted that he lied about my involvement surround the September 3, 2014 drug deal because he was threatened by an interrogating officer with prison time. Harris admitted that he originally told the detective who interrogated him that I wasn't even at the apartment or that I gave him drugs to sell but that the officer kept telling him that I did and as a result he went along with the story and falsely accused me of giving him drugs to keep from going to prison."

¶ 24 Defendant also submitted a second affidavit from Parker, wherein Parker averred he could not have been discoverable by defendant at the time of the trial because (1) Parker was in Bloomington only during the afternoon of September 3, 2014, (2) Parker returned to Belleville, Illinois, that evening, (3) neither Harris nor defendant knew Parker's Belleville address, and (4) Parker had not been to Bloomington since September 3, 2014. Parker further stated defendant was not present at 909½ W. Mulberry Street on September 3, 2014, when Parker "observe[d] [Velez] pay [Harris] a drug payment following a drug deal." Parker "watched [Harris] set this deal up over the phone." Parker continued: "[Defendant] is innocent and had nothing to do with this crime because I was there." Defendant also attached Parker's previous affidavit filed with his section 2-1401 petition.

¶ 25 In December 2020, the trial court denied defendant leave to file a successive postconviction petition. The court found the new affidavits still had not precluded a guilty verdict on a theory of accountability. Additionally, the court was unconvinced Parker could not have been discovered earlier by defendant's due diligence. Defendant appealed.

¶ 26        On appeal, this court reversed the trial court's dismissal. *People v. Coe*, 2021 IL App (4th) 210031-U. We found Parker's affidavits were new evidence, and, when Parker's second affidavit was taken as true, he could not have been discoverable by defendant's due diligence. *Id.* ¶ 43. Furthermore, Parker's affidavits, taken as true, would make Raisbeck's identification of defendant's voice unreliable. *Id.* ¶ 44. Defendant's "guilty verdict on count II rested heavily on Raisbeck's voice identification [of defendant]." *Id.* We concluded because Raisbeck's testimony and Parker's averments cannot both be true, and that the court must take Parker's affidavits as true at the first stage of postconviction proceedings, Parker's affidavits "undermine confidence in Raisbeck's voice-identification testimony and probably would change the outcome on count II." *Id.* We remanded the matter for further proceedings pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122 *et seq.* (West 2020)). *Id.* ¶ 46.

¶ 27                              D. Evidentiary Hearing

¶ 28        On remand, defendant proceeded *pro se*. The State moved to dismiss defendant's petition, arguing he had not shown a substantial deprivation of his constitutional rights. The trial court denied the State's motion and the matter proceeded to an evidentiary hearing in March 2023.

¶ 29        Parker testified he was at 909½ West Mulberry Street on September 3, 2014. Parker was there with Harris. Parker witnessed Harris arrange a drug deal over the phone with Velez. Parker confirmed a "tall slim guy" came to the residence and handed Harris some money. Parker confirmed defendant was never at the residence where Harris arranged and delivered cocaine to Velez. Parker confirmed on September 3, 2014, only Harris, Velez, and himself were present during the "drug deal." Parker did not recall anyone else being present when Velez came to pay Harris. Parker eventually left Bloomington to go back to Belleville. Parker stated he had

- 9 -

known Harris for approximately 20 years and was in Bloomington on September 3, 2014, to prepare for "a Memorial Day."

¶ 30    On cross-examination, the State noted differences in Parker's handwriting between the two affidavits in defendant's petition. Parker stated he wrote both the affidavits. When asked how Parker's handwriting had changed, Parker stated, "I mean I don't see anything wrong with it. That's the way I write." The State introduced a certified copy of Parker's conviction for armed robbery in Madison County case No. 14-CF-1908. The State directed Parker's attention to an affidavit within the exhibit that Parker identified as an affidavit he wrote. The State noted Parker had written his name differently in three separate affidavits: Parker's affidavit within the certified copy of conviction, Parker's first affidavit for defendant's section 2-1401 petition, and Parker's second affidavit for defendant's successive postconviction petition. Parker admitted it was a "possibility" due to a learning disability. Parker could not recall the color of the West Mulberry residence nor what was next to the house on either side or across the street. Parker admitted the armed robbery he was in prison for occurred on September 6, 2014. Parker stated he met defendant for the first time when they were in prison together.

¶ 31    The trial court admitted an affidavit from Raisbeck with attached police reports. Therein, Raisbeck documented interviewing Harris on September 29, 2014, where Harris stated defendant gave him cocaine in the alley near the West Mulberry residence and told him to take it to Catherine and Locust Streets and "give it to the guy." Harris followed defendant's instructions. When Harris returned, defendant asked Harris where the money was and Harris told defendant that he did not tell Harris to get any money. Harris was shown a photograph that he identified as defendant. The court admitted a verification of incarceration record for Parker from the Illinois Department of Corrections (IDOC). The court also admitted Parker's certified copy

of conviction for impeachment purposes. The court admitted defendant's exhibits: Parker's two affidavits. Defendant presented no rebuttal evidence to the State's evidence.

¶ 32     The trial court found defendant's new evidence was unlikely to change the result at a new trial. The court found defendant's new evidence "highly suspect and not [credible]." The court noted:

> "Mr. Parker was in Bloomington one time only for one night and just so happened to be at the place where the drug deal which [defendant] was convicted took place. Mr. Parker states no reason as to why he was in Bloomington. He has presented no detail as to when he came or how he got here. He does not state who he came to see or what time he left. He remembers specifically the names of the individuals involved in the drug transaction and knows specifically that [defendant] was not there. Yet, he does not remember anything about the color of the house or what surrounded the house. He recalled all of this approximately 4 years after the fact, while him and [defendant] were serving IDOC sentences in the Danville Correction Center. This testimony and evidence in the Court[']s view is not [credible]."

¶ 33     The trial court denied defendant's postconviction petition.

¶ 34     This appeal followed.

¶ 35                  II. ANALYSIS

¶ 36     On appeal, defendant contends the trial court's findings following the evidentiary hearing were manifestly erroneous. Defendant argues Parker's testimony was sufficiently credible to warrant a new trial.

¶ 37     The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23. The Act contemplates the filing of only a single postconviction petition and expressly provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is [forfeited]." 725 ILCS 5/122-3 (West 2022). The trial court may grant a defendant leave to file a successive postconviction petition if the defendant demonstrates (1) cause for his failure to bring a claim in the initial petition and (2) prejudice results from that failure. *Crenshaw*, 2015 IL App (4th) 131035, ¶ 28.

¶ 38     However, when a defendant sets forth a claim of actual innocence in a successive postconviction petition, he is excused from showing cause and prejudice. *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009). To succeed on a claim of actual innocence in postconviction proceedings, a defendant must present evidence that is (1) new and could not have been discovered prior to trial through due diligence, (2) material to the issue of defendant's innocence, (3) noncumulative of the evidence presented at trial, and (4) sufficiently conclusive that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. At the third stage of postconviction proceedings, the defendant has the burden of making a substantial showing of a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). Following a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). A ruling is manifestly erroneous only if it contains an error that is clearly evident, plain, and indisputable. *Ortiz*, 235 Ill. 2d at 333.

¶ 39     Defendant specifically contends (1) the trial court incorrectly placed too much emphasis on Parker's inability to recall unimportant details, (2) Parker's testimony corroborated

trial evidence, and (3) Parker's testimony would have had an effect on the jury's verdict because it would have undermined Raisbeck's identification of defendant's voice on the recordings, which was the sole evidence implicating defendant in the drug transaction.

¶ 40       In reaching its conclusion, the trial court considered the pleadings, evidence, and arguments. The court found the evidence was not of such a conclusive character that it would likely change the result of defendant's conviction at a new trial. The court based its decision largely on finding Parker's testimony lacked credibility. We do not find the court's determination manifestly erroneous.

¶ 41       The trial court must consider whether the new evidence "undercuts the court's confidence in the factual correctness of the guilty verdict." *Coleman*, 2013 IL 113307, ¶ 97. "[T]he new evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 56. "Probability, not certainty, is the key as the trial court in effect predicts what another jury would likely do, considering all the evidence, both new and old, together." *Coleman*, 2013 IL 113307, ¶ 97. "[T]he conclusiveness of the new evidence is the most important element of an actual innocence claim." *People v. Sanders*, 2016 IL 118123, ¶ 47.

¶ 42       The trial court's emphasis on Parker's inability to recall details about the West Mulberry residence was proper, as these were not unimportant details. At the evidentiary hearing, "the trial court acts as a fact-finder, making credibility determinations and weighing the evidence." (Internal quotation marks omitted.) *People v. Carter*, 2021 IL App (4th) 180581, ¶ 58. "Any time a trial court serves as a fact finder, perhaps the single most important thing the court can do is say whom it believes and whom it does not. When the trial court favors us with such a finding, we are at the height of our deference to that court." *Id.* ¶ 68. Parker's testimony served to

prove defendant's contention that he was never present at the residence on September 3, 2014, which was largely gleaned from defendant's leading questions predicated on Parker's affidavits. Therein, Parker's memory recall was detailed and specific. Parker's testimony was only consistent with the trial evidence insomuch as it confirmed Velez had received the cocaine from Harris. However, when Parker was confronted with open-ended questions on cross-examination by the State, his ability to recall details of any kind immediately fell apart. The court's finding that Parker's testimony lacked credibility was not manifestly erroneous.

¶ 43        We also cannot say that Parker's testimony at trial would have likely influenced the jury's verdict by undermining Raisbeck's identification of defendant's voice on the recordings. At trial, the State had to prove that defendant, or one for whose conduct he was legally responsible, namely Harris, knowingly delivered cocaine. 720 ILCS 570/401(d)(i) (West 2014); 720 ILCS 5/5-2(c) (West 2014). Parker's testimony at a new trial would require a jury to believe that defendant did not aid or abet Harris in delivering Velez the cocaine or receiving the $200 from Velez because defendant was not there on September 3, 2014. Parker's testimony does not negate what Raisbeck testified he heard on the recordings; it only creates a conflict in the evidence for a jury to resolve.

¶ 44        The evidence showed defendant admitted to Raisbeck he sold cocaine and that Raisbeck recognized defendant's voice when Velez was arranging a controlled purchase for cocaine. Three recordings purporting to show defendant's voice were admitted into evidence and published for the jury to hear for themselves. Defendant's entire contention on appeal is that Parker's testimony undermines the State's sole evidence implicating him: Raisbeck's voice identification of defendant on the recordings. This is simply not true. The jurors would have also been able to compare Raisbeck's identification of defendant's voice with their own assessment

based on hearing the recordings and defendant's voice at trial, where defendant spoke in abundance when representing himself. Defendant, himself, even attempted to distinguish the sound of his voice at trial from that of the recordings when cross-examining Raisbeck. The jurors did not need to rely solely on Raisbeck's identification but could also make their own independent assessments of the recordings to determine whether or not it was defendant's voice on the recordings. "When evaluating evidence and choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense." (Internal quotation marks omitted.) *People v Rudd*, 2020 IL App (1st) 182037, ¶ 58.

¶ 45     Considering all the evidence, old and new, we find Parker's testimony was not of such a conclusive character that it undercut the trial court's confidence in the factual correctness of the jury's original guilty verdict. Therefore, we conclude the court's judgment was not manifestly erroneous.

¶ 46                              III. CONCLUSION

¶ 47     For the reasons stated, we affirm the trial court's judgment.

¶ 48     Affirmed.